838 So.2d 876 (2003)
HANOVER COMPRESSOR COMPANY
v.
DEPARTMENT OF REVENUE, STATE OF LOUISIANA.
No. 02-0925.
Court of Appeal of Louisiana, Third Circuit.
February 5, 2003.
*877 Bruce James Oreck, Nicole Crighton, Jesse R. Adams, III, Oreck, Bradley, Crighton, Adams & Chase, New Orleans, LA, for Plaintiff/Appellee, Hanover Compressor Company.
Dwana Christy King, Attorney for the Secretary of the Department of Revenue, Baton Rouge, LA, for Defendant/Appellant, State of Louisiana, Department of Revenue.
Court composed of NED E. DOUCET, Jr., Chief Judge, OSWALD A. DECUIR and MARC T. AMY, Judges.
AMY, Judge.
The Department of Revenue appeals the affirmation of a decision of the Board of Tax Appeals, concluding that no sales or use taxes were due from the plaintiff compression company for natural gas consumed in its operation. For the following reasons, we affirm.

Factual and Procedural Background
Hanover Compressor Company is engaged in the compression of natural gas produced from its customer's wells. This compression occurs at the wellhead after a liquid/gas mixture is obtained from the well. According to testimony, the liquids and gas are separated. However, the gas is still in a "wet" form. This wet gas is compressed in the plaintiff's compression unit. A portion of the wet gas mixture is used to fuel Hanover's compression unit. The remaining liquid is subsequently removed, with the natural gas then traveling through a meter, monitoring the volume.
Hanover's compression services are performed pursuant to a contract entered into with its customers entitled "Contract Gas Compression Master Equipment & Operating Agreement." A portion of the contract requires that the customer shall "furnish free use of suitable, sweet, dry natural gas fuel for engine use." It is the consumption of the gas mixture that was the subject of an assessment by the Louisiana Department of Revenue. The assessment followed an audit, encompassing the period between January 1993 and July 1995. The Department of Revenue asserted that taxes were owed on Hanover's consumption of the gas mixture for purposes of fueling its compression units.
Hanover filed a Petition for Redetermination of Assessment with the Board of Tax Appeals.[1] Hanover alleged that they rendered their services pursuant to a contract that provided them with "free use" of the gas mixture that was at all times owned by the customer, the producer of the gas. In the petition, Hanover argued that "there has been no transaction translative of ownership prior to consumption of the gas." Hanover further stated: "Therefore, prior to the consumption of the gas in the compressors, the gas has *878 never been the subject of a "sale" and therefore, cannot be subject to a "use" tax." Hanover alternatively argued that, in the event that a tax was found due, the amount accessed by the Department was excessive in that the "cost price" of the mixture was overvalued. The Department argued that if Hanover's customers had not provided the gas mixture for energy purposes, Hanover would have been required to supply its compressors from an outside source, ultimately resulting in higher costs passed along to its customers. It asserted that the Louisiana Supreme Court's decision in Columbia Gulf Transmission Co. v. Broussard, 94-1650 (La.4/10/95); 653 So.2d 522, is supportive of its position that natural gas consumed in its service to its customers is subject to taxation.
Following a hearing, the Board of Tax Appeals found in favor of Hanover, vacating the Department's assessment. In written reasons for ruling, the Board reviewed the factual background of Hanover's services, noting that Hanover's compressors burn the pre-metered gas mixture and that it was not metered before this point "because its measurement would be pointless as there is no market for this gas mixture." It explained that the customer does not charge Hanover for the gas mixture needed for operation of the compressor. The Board also observed that the customer pays Hanover "a flat monthly fee for the compression service regardless of the volume of gas that is compressed and even if no compression takes place." Referencing testimony offered at the hearing, the Board explained that "the actual market price for pure natural gas, even in periods of the highest natural gas prices, was irrelevant to the Taxpayer and its customers in doing business with each other." The Board concluded that there was no evidence indicating that ownership transferred from the customer to Hanover and that it was unaware of any prohibition against an agreement permitting the customer to retain ownership of a gas mixture, but permit the use by another.
Ultimately, the Board found that there had been a transfer of possession for sales tax purposes, but that there was no associated sales price and, therefore, no sales tax was due. It also concluded that the use of the gas met the definition of "use" in La.R.S. 47:302(A)(2). However, the Board found that no use tax was due as the cost price of the mixture was $0. The Board continued, addressing Hanover's alternative argument that the valuation process used by the Department was excessive. The Board agreed, concluding that the gas mixture should not be valued as marketable, natural gas. Rather, the Board found the appropriate valuation to be based on the producer's costs associated with extracting the gas to the surface. The Board found the "lifting" price to be $.51 per mcf.
The Board also considered Hanover's assertion that taxation on this type of gas mixture is violative of La. Const. art. 7, § 4(B). The Board agreed that the taxation pursued in this instance is similar to that discussed by the supreme court in Bel Oil Corp. v. Fontenot, 238 La. 1002, 117 So.2d 571 (1959). In that case, the supreme court found a statute imposing a gas gathering tax to be in violation of the constitutional article. Further, the Board disagreed with the Department's assertion that the use of the gas mixture was taxable pursuant to Columbia Gulf, 94-1650; 653 So.2d 522, finding the instant matter factually distinguishable. The assessment was vacated.
Hanover filed for review of the Board's decision with the trial court.[2] The trial *879 court affirmed the decision. The Department of Revenue appeals, presenting the following issues for review:
1. Was the district court correct in holding that the Board of Tax Appeals properly distinguished the Columbia Gulf Transmission case?
2. Is Hanover's consumption of gas taxable pursuant to R.S. 47:302 A(2) and R.S. 47:301(19)?
3. Did the Board of Tax Appeals improperly apply the Bel Oil case to the factual situation in Hanover?
4. Did the Board of Tax Appeals improperly and contradictorily assign both a value of zero and $.51 per mcf to the gas consumed by Hanover?

Discussion

Standard of Review
The scope of the judicial review of the Board of Tax Appeals is not controlled by the administrative procedure law found at La.R.S. 49:951, et seq. Instead, it is exempted from those provisions by La.R.S. 49:967. In Collector of Revenue v. Murphy Oil Co., 351 So.2d 1234 (La.App. 4 Cir.1977), the Board of Tax Appeals was described as acting as a trial court. A trial court's jurisdiction to review a decision of the Board is provided by La.R.S. 47:1435, as follows:
The district courts shall have exclusive jurisdiction to review the decisions or judgments of the board, and the judgment of any such court shall be subject to further appeal, suspensive only, in accordance with law. If a suspensive appeal is taken from a judgment of the district court no further bond need be posted and the bond originally posted remains in full force and effect to guarantee the payment of any tax, interest, and penalty until final decision of the court.
Upon such review, such courts shall have the power to affirm or, if the decision of the judgment of the board is not in accordance with law, to modify, or to reverse the decision or judgment of the board, with or without remanding the case for further proceedings as justice may require.
*880 The trial court is required to conduct its review upon the record that was before the Board. Crawford v. American Nat. Petroleum Co., 00-1063 (La.App. 1 Cir. 12/28/01); 805 So.2d 371. It considers only facts on the Board's record and questions of law. Id. The Louisiana Supreme Court observed in St. Pierre's Fabrication and Welding, Inc. v. McNamara, 495 So.2d 1295 (La.1986), that the Board's findings of fact are to be accepted by the reviewing trial court where there is substantial evidence in the record to support them. These findings of fact are not to "be set aside unless they are manifestly erroneous in view of the evidence on the entire record." Id. at 1298. The Board's decision must be affirmed absent legal error or a failure to follow the correct procedural standards. Murphy Oil Co., 351 So.2d 1234. See also Crawford, 00-1063; 805 So.2d 371. In our review of the trial court's decision, we are mindful of the standard of review required of that court.

Failure to Find Taxes Due
Review of the transcript before the Board indicates that the Department did not pursue tax recovery from Hanover under separate concepts of sales or use taxes. It pursued a "consumption" approach under both. The Board's written reasons for ruling indicate that its factual findings were applied to the statutory provisions of both types of taxes. After stating that it found no evidence indicating transfer of ownership of the wet gas mixture and concluding that Hanover burned its customer's product, the Board stated:
There is no sales tax due. As defined by LSA-R.S. 47:301(12),[3] a sale can be a transfer of possession, but the amount of the tax is measured by the Sales Price. The Sales Price is defined by LSA-R.S. [47:]301(13)(a)[4] "... the total amount for which tangible personal property is sold ...". In this case there is no sales price.
The use of the gas by Taxpayer meets the definition of use which is "use or consumption" in both LSA-R.S. [47:]302A(2) which imposes the tax and in LSA-R.S. [47:]301(3)(A).[5] The cost price is defined to be actual cost of the article or its reasonable market value, whichever is less. In this case the cost *881 price is $0. The cost price is less than the market value. Therefore no use tax is due.
While the Department might phrase it differently for purposes of argument, we point out that the Board found that the statutory definitions of both "sale" and "use" were met. It simply found that there is no value to these types of taxes as they might apply in this case and, accordingly, none is due. In particular, we note that the Board's determination that the consumption of the wet gas mixture meets the definition of "use" in La.R.S. 47:302(A)(2) and La.R.S. 47:301(3)(a), and the trial court's affirmation of that determination, have not been appealed. Although not framed as such, what the Department appeals, essentially, are the findings of the Board that preclude recovery of the tax in this instance.
At the hearing, the Department asserted that the Louisiana Supreme Court's opinion in Columbia Gulf, 94-1650; 653 So.2d 522 should control recovery of taxes related to this type of consumption. In Columbia Gulf, the supreme court considered a tax assessment against the plaintiff, who was in the business of transporting natural gas from offshore Louisiana to Kentucky. The gas was transported through underground interstate pipelines. As the gas traveled through the pipeline, pressure was lost, requiring repeated compression. In Louisiana, the gas was recompressed at four compressor stations. A portion of the gas was diverted to fuel the engines. The Department attempted to levy a use tax on the fuel consumed within the State. Columbia Gulf questioned whether the product was "used" within the terms of La.R.S. 47:305(E), a statute qualifying the imposition of taxes on property related to interstate commerce. The supreme court found the consumption of the fuel in that case came within the definition of La.R.S. 47:305(E),[6] stating:
When the natural gas compressor fuel is consumed, it comes to rest and *882 becomes a part of the state's property. Fuel must necessarily come to rest as it is consumed. It ceases to exist; it is terminated; it is used in Louisiana; it cannot be taxed in another state. Thus, the natural gas is subject to tax when it is consumed in the state under the language of the statute.
Id. at p. 3-4; at 524. The Department contends that the instant matter is analogous in that the wet gas mixture has come to rest, has ceased to exist, and has been used in Louisiana. Thus, the Department contends a use tax is appropriate and the Board's attempt to distinguish Hanover's consumption with that examined by the supreme court in Columbia Gulf is inconsistent with the terms of Title 47.
In distinguishing Columbia Gulf, the Board explained:
The Secretary attempted to argue that Columbia Gulf Transmission ... was analogous, but the Board finds clear factual distinctions between that case and the subject case. First, Columbia Gulf involved compression of metered gas, whereas in this case, the gas-mixture was not yet metered and with good business reason. Second, the fuel consumed in Columbia Gulf was itself metered; in the instant case the gas-mixture was not metered and, again, with good reason.
The Department's objection to these findings appears misplaced. Again, the Board found the consumption to be a "use." This is unquestioned. Although the Board answered questions raised by the Department regarding the applicability of Columbia Gulf, it found factual differences. The factual difference cited by the Board related to the metering of the gas, a distinction which is important to the valuation of the gas. The distinction does not relate to whether there was a use. Our review of the record confirms the existence of evidence confirming the differences pointed to by the Board. The consumption at issue occurred very early in the process, with one witness explaining that it was not metered in this early, crude stage as there was no reason to do so, i.e., the gas mixture was not marketable in that form. The gas at issue in Columbia Gulf was metered during the process and would appear to be in a more refined stage. Again, these factors set forth by the Board are more relevant to the issue of the gas mixture's value, than to whether a use occurred.
We also find misplaced the argument that Columbia Gulf stands for the proposition that a "sale" does not require a transfer of ownership for taxation purposes. In the present case, the Board acknowledged that a "transfer of possession" can constitute a "sale" under La.R.S. 47:301(2), but concluded that, in this case, there was no "sales price." This determination precludes recovery of a sales tax. In our view, Columbia Gulf is inapplicable to this portion of the Board's finding as the supreme court, in that case, did not address "sales price." The court was squarely answering a "use tax" question on the consumption of the natural gas under La.R.S. 47:305(E). It was also concerned with a Commerce Clause issue posed by the plaintiff. We do not read any portion of the Columbia Gulf opinion to require valuation by the method proposed by the Department.
Accordingly, not finding the Board's treatment of Title 47 and Columbia Gulf inconsistent, this assignment lacks merit.

*883 Consideration of Bel Oil Corp v. Fontenot

The Department questions the Board's determination that La. Const. art. 7, § 4(B) precludes the imposition of tax in this instance. The constitutional provision permits a tax on the severance of natural resources, but dictates that "[n]o further or additional tax or license shall be levied or imposed upon oil, gas, or sulphur leases or rights." Id. At the hearing, Hanover referenced Article 7, § 4(B), seeking acknowledgment that its consumption was similar to that present in Bel Oil Corp., 117 So.2d 571, a case in which the Louisiana Supreme Court considered a "gas gathering tax" statute under the severance provision of the state constitution as it existed at that time. The Board agreed with the similarity of Bel Oil, stating:
The Taxpayer contends that the imposition of the tax at issue is in violation of Art. 7, Sect. 4(B) of the Louisiana Constitution of 1974. The pertinent part of which Section states that, after imposing the severance tax, "... No further additional tax or license shall be levied or imposed on oil, gas or sulfur leases or rights ...". The preceding constitution, that of 1921, had the same prohibition. In the case of Bel Oil ..., the Louisiana Supreme Court held in 1959 that the aforementioned Constitutional provision prohibited the imposition of a Gas Gathering Tax that was imposed on the transportation of gas after its severance from the well to the first meter at or near the well. In that case it stated on page 573:
"The District Judge, in a well considered opinion, reasoning that the plaintiff has the right under its leases not only to explore for and produce gas but also to market the gas so produced, since otherwise the right to explore for and produce would be valueless, and that in marketing the gas producer must necessarily measure it, and that the gas here involved covers that precise operation, i.e., the transporting of the gas after severance to the first meter, concluded `... it is a license tax on the exercise of a right under the lease' and therefore void under the language of Section 21 of Article 10, La.Constitution of 1921 as amended."
The factual situation presented in this case is generally the same as that in the Bel Oil case. The Secretary is prohibited by our Constitution from taxing the gas in question.
We have reviewed the supreme court's decision in Bel Oil, 117 So.2d 571, and find no error in the trial court's acceptance of the Board's appreciation of the facts, given the supreme court's reasoning. In this case, testimony existed that consumption occurred at the wellhead, that the gas was in an unpurified form, and that it had not yet been metered. We do not conclude that the trial court was required to reverse this finding. Accordingly, this assignment is without merit.[7]

Valuation
In its final assignment of error, the Department assigns error to the determination that the gas mixture consumed was valueless. Instead, it argues to this court that:

*884 Because its customers supplied it with gas, Hanover did not have to purchase gas elsewhere. If Hanover did have to purchase gas elsewhere, Hanover would have had to charge more for its services. The customer supplied the fuel in exchange for lower monthly rates. The tax is computed on the monetary value of the exchange. The monetary value of the exchange would be the difference in what Hanover charged its customers when it received "free" gas, and the amount it would have charged if it had to purchase the gas elsewhere. That value would be the spot market value of the gas.
We disagree that the determination of the value was in error.
In finding the gas mixture valueless, the Board referenced La.R.S. 47:301(3)(A) for the definition of "cost price" associated with the amount of use tax owed. In sum, the statute defines the term as "the actual cost of the articles of tangible personal property ... or the reasonable market value of the tangible personal property at the time it becomes susceptible to the use tax, whichever is less." (Emphasis added.) In this instance, as the gas mixture was supplied by the customer, the actual cost was found to be zero and, thus, no taxes were due.
The Department would require the finding that the market price be that used by the Board. However, the statute requires otherwise, focusing on the lesser of the actual cost or the market value. We also acknowledge that the "market value" of such a gas mixture advanced by the Department would not necessarily be supportable by the record. In fact, the Board described the Department's attempt to equate the value of the gas mixture to that of natural gas, to be "an attempt to compare apples and oranges." Our review of the testimony regarding the quality of the unmeasured, wet gas mixture reveals no manifest error in that view.
We also find no merit in the Department's argument that the Board's view that the gas mixture was valueless for taxation purposes contradicts a finding that the market value at the point of consumption was $.51 per mcf, the lifting costs associated with the gas mixture. We find no contradiction between the two findings as this latter determination was in response to an alternative argument of Hanover. It argued that in the event taxes were found due, the assessment should be based on the lifting costs, not the market value of natural gas. Again, given the different nature of the wet gas mixture and the product natural gas, we find no manifest error in the Board's valuation in this alternative argument.

DECREE
For the foregoing reasons, the decision of the trial court is affirmed. All costs of this proceeding are assessed to the appellant, the Department of Revenue, State of Louisiana, in the amount of $ 1,440.47.
AFFIRMED.
NOTES
[1] See La.R.S. 47:1401, which created the Board of Tax Appeals and provides:

In order to provide a board that will act as an appeal board to hear and decide, at a minimum of expense to the taxpayer, questions of law and fact arising from disputes or controversies between a taxpayer and the collector of revenue for the State of Louisiana in the enforcement of any tax, excise, license, permit or any other tax law administered by the collector, the Board of Tax Appeals, hereinafter referred to as the board, is created as an independent agency in the executive department of the state government, and for the purpose of this Chapter.
[2] See La.R.S. 47:1434, which provides:

After a decision or judgment of the board, the collector or the taxpayer may, within thirty calendar days after such decision or judgment has been rendered and signed, file a petition with the district court in accordance with the provisions hereinafter set out, for review of the said decision or judgment of the board. The party filing such petition shall before the filing of same, either at open hearing or by motion, notify the board of his intention to file such petition for review. Provided that when the board has found any tax to be due, a taxpayer must, when giving the notice of intention to file a petition for review, post bond, with surety approved by the board conditioned upon the payment of the tax as finally determined, together with any interest, additional amounts or additions to the tax provided for by law, payable to the collector, in an amount not to exceed one and one-half times the said tax, interest, and penalty found to be due in said decision or judgment of the board, and the posting of such bond shall be a condition precedent to the filing of any petition for review in any district court.
Thereafter, and within the thirty calendar days from the date of the rendering and signing of such decision or judgment of the board, the taxpayer may file his petition for review with the proper district court, setting forth specifically any errors which may have been committed by the board in reaching its decision or judgment.
When the district judge has ordered the review, a copy of the order and petition shall be mailed to the secretary-clerk of the board, and the opposing party or counsel representing him, and the order shall command the secretary-clerk of the board to send up within twenty days from the date thereof the original transcript of the record, together with all exhibits and evidence thereto attached; which record shall be the basis for any action on review and the decision of the district court shall be rendered upon the said record as made up before the board.
[3] La.R.S. 47:301(12) provides:

"Sale" means any transfer of title or possession, or both, exchange, barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property, for a consideration, and includes the fabrication of tangible personal property for consumers who furnish, either directly or indirectly, the materials used in fabrication work, and the furnishing, preparing or serving, for a consideration, of any tangible personal property, consumed on the premises of the person furnishing, preparing or serving such tangible personal property. A transaction whereby the possession of property is transferred by the seller retains title as security for the payment of the price shall be deemed a sale.
[4] La.R.S. 47:301(13)(a) provides:

"Sales price" means the total amount for which tangible personal property is sold, less the market value of any article traded in including any services, except services for financing, that are a part of the sale valued in money, whether paid in money or otherwise, and includes the cost of materials used, labor or service costs, except costs for financing which shall not exceed the legal interest rate and a service charge not to exceed six percent of the amount financed, and losses; provided that cash discounts allowed and taken on sales shall not be included, nor shall the sales price include the amount charged for labor or services rendered in installing, applying, remodeling, or repairing property sold.
[5] La.R.S. 47:301(3)(a) defines "cost price" as follows:

"Cost price" means the actual cost of the articles of tangible personal property without any deductions therefrom on account of the cost of materials used, labor, or service cost, except those service costs for installing the articles of tangible personal property if such cost is separately billed to the customer at the time of installation, transportation charges, or any other expenses whatsoever, or the reasonable market value of the tangible personal property at the time it becomes susceptible to the use tax, whichever is less. La.R.S. 47:302 requires the imposition of tax as follows:
A. There is hereby levied a tax upon the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state, of each item or article of tangible, personal property, as defined herein, the levy of said tax to be as follows:
. . . .
(2) At the rate of two per centum (2%) of the cost price of each item or article of tangible personal property when the same is not sold but is used, consumed, distributed, or stored for use or consumption in this state; provided there shall be no duplication of the tax.
[6] La.R.S. 47:305 provides specific exclusions and exemptions from taxation. Section E states:

It is not the intention of this Chapter to levy a tax upon articles of property imported into this state, or produced or manufactured in this state, for export; nor is it the intention of this Chapter to levy a tax on bona fide interstate commerce; however, nothing herein shall prevent the collection of the taxes due on sales of tangible personal property into this state which are promoted through the use of catalogs and other means of sales promotion and for which federal legislation or federal jurisprudence enables the enforcement of this Chapter upon the conduct of such business. It is, however, the intention of this Chapter to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state, of tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state. At such time as federal legislation or federal jurisprudence as to sales in interstate commerce promoted through the use of catalogs and other means of sales promotions enables the enforcement of this Chapter against vendors that have no other nexus with this state, the following provisions shall apply to such sales on which sales and use tax would not otherwise be collected.
(Emphasis added.)
[7] The Department asserts that the Board was without jurisdiction to consider the constitution in the determination of this case. We note that although the Board of Tax Appeals does not have the authority to determine the constitutionality of a statute, see Midboe v. Com'n on Ethics for Pub. Empl., 94-2270 (La.11/30/94); 646 So.2d 351, the Board was not addressing the constitutionality of a statute in this instance. Instead, it referenced the constitution and supreme court jurisprudence in determining whether the tax imposed was permissible in this instance.