974 So.2d 54 (2007)
Cynthia BRIDGES, Secretary, Department of Revenue, State of Louisiana.
v.
PRODUCTION OPERATORS, INC.
No. 2007-CA-0648.
Court of Appeal of Louisiana, Fourth Circuit.
December 12, 2007.
Rehearing Denied January 16, 2008.
*55 Emily W. Toler, Donald Bowman, Frederick Mulhearn, Nykeba Walker, Antonio Ferachi, Louisiana Department of Revenue, Legal Division, Baton Rouge, LA, for Plaintiff/Appellant.
Jesse R. Adams, III, Nicole Crighton, Andre B. Burvant, Oreck, Crighton, Adams & Chase, LLC, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge, JAMES F. McKAY, III, Judge, MAX N. TOBIAS, JR.).
PATRICIA RIVET MURRAY, Judge.
This is a sales tax case.[1] The Louisiana Department of Revenue sued Production Operators, Inc. ("POI"), a gas compression company, seeking to recover taxes on the customer-supplied fuel that POI used to power its compressors. From the trial court's judgment granting POI's motion for summary judgment and ordering that the Department vacate its assessment, the Department appeals. For the reasons that follow, we reverse and remand.

FACTUAL AND PROCEDURAL BACKGROUND
During the tax period at issue (January 1, 1997 through December 31, 1999), POI was a provider of natural gas compression services to companies engaged in the exploration and production of natural resources in Louisiana. POI's services were provided pursuant to a form gas compression contract with its customers. Under that contract, the customer was required to provide compressor fuel at no cost to POI. Following an audit, the Department determined that POI owed additional taxes for the tax period on the customer-supplied fuel that POI used to power its compressors located in Louisiana.
On September 28, 2000, the Department issued a proposed assessment for additional taxes and statutory interest in the total amount of $129,652.96, which POI refused to pay.[2] On December 20, 2001, the Department filed this suit against POI pursuant to La. R.S. 47:1561(3), which provides for the collection of taxes by ordinary suit. In its petition, the Department seeks to recover taxes, interest, and attorney's fees.
*56 Answering the petition, POI denied that it owed additional sales or use taxes and averred that it did not owe any use tax on any natural gas it consumed in providing its compression services in this state. POI also asserted the following defenses:
 Under its contracts with its customers, POI does not purchase natural gas. As such, there is no transaction that is subject to tax. At all times, the natural gas that" is utilized in POI's compressors is owned by the producer of that gas.
 Because POI's customers retain ownership of the gas at all times, POI cannot be liable for a use tax. Under the relevant statutes, a use tax can only be owed by the owner of the tangible property being used.
 The Department's attempt to collect the taxes at issue violates La. Const. Art. VII, § 4, which directs that no additional taxes are to be imposed upon the right to produce and market oil and gas in Louisiana. See Bel Oil Corp. v. Fontenot, 238 La. 1002, 117 So.2d 571 (1959).
 Even if POI is liable for a sales or use tax, the Department has overvalued the natural gas that is used in POI's compressors. Under its contracts with its customers, the producer is obligated to furnish natural gas to POI. As such, the "sales price" of the gas is zero. If the tax is based upon POI's "use" of the gas, the tax is based upon POI's cost of the gas or the market value of the gas "which ever is less." Because POI's alleged purchase price is zero, it can owe no tax. Moreover, because there is no market for the gas where it is used, on the lease, if the gas has any value it would be the cost of production or "lifting cost" of the gas. In either event, the Department's assessment is overstated because it overvalued the gas used in POI's compressors.
On February 7, 2006, POI filed a motion for summary judgment seeking an order that the Department vacate its assessment. In support of its motion, POI offered a copy of a representative POI gas compression contract and the affidavit of Brian Matusek, POI's president during the tax period. In his affidavit, Mr. Matusek attested to the following facts:
 The compression provided by POI was the first compression of the gas flowing out of its customer's well, and it was necessary to move the gas downstream to processing plants and ultimately to market and customers. POI compressed the gas before it was processed in any way, including the removal of water vapor, which was typically done at the customer's well site.
 POI's compressors were specifically designed to operate on the unprocessed gas found at the customer's well site. The gas at the point where POI operated its compressor was not market quality gas and could not be sold to consumers.
 POI's compressors siphoned off enough gas to operate from the gas flowing through them. POI had no right to a certain amount of gas and could only use enough gas to compress the customer's gas. The gas that was used in POI's compressors was not metered or measured in any way by either party and neither party accounted for the gas that was used. In fact, because of the water vapor in the gas mixture, measuring and metering the gas at this point was inefficient and inaccurate.
 For its services, POI received a flat monthly fee. The amount of gas mixture consumed had no consequence on POI's compensation and was not a *57 term that POI and its customer negotiated. POI's fee did not vary based upon the amount of gas mixture used. In fact, POI received its monthly fee even if the compressor was not in use.
 POI did not purchase the gas mixture from its customers nor did it negotiate a sales price for the gas mixture. POI's customers simply allowed POI's compressors to consume the unmarketable gas mixture at no cost to POI.
Mr. Matusek also attested that he had reviewed the copy of the representative contract for gas compression services that POI used during the pertinent period.[3]
Opposing POI's motion, the Department presented the affidavit of Joseph Louis, the revenue agent who performed the audit of POI. Mr. Louis attested to the following facts:
 At the request of the auditor, POI was able to provide a listing by compressor unit of the fuel used for each year and the engine specifications for several compressor engines to explain how it calculated the fuel used. The reports compiled by POI's engineering and operations departments were included as schedules as part of the Department's audit report. The information about the quality of gas utilized, horsepower capacity of the engines and operating time of the engines used by POI were taken into account by its engineering and operations departments in compiling the reports, which identified the compressor fuel utilized. This information was also included in the audit.
 The Department's auditor was able to calculate a monthly average of the amount of compressor fuel utilized by POI for each year of the audit period. This was calculated by dividing it by twelve months to give a monthly average. The auditor then applied the spot market rate for each month of the audit period of January 1, 1997 through December 31, 1999 to calculate the monthly value of the compressor fuel utilized. The taxable value of the compressor fuel was then calculated by multiplying the monthly value with the Louisiana state taxable rate of four percent (4%) for each month. The total amount due for the tax on compressor fuel is $87,384.00.[4]
As noted, the trial court granted POI's motion for summary judgment and rendered judgment ordering that the Department vacate its assessment of $129,652.96 together with interest and penalties.[5]

DISCUSSION
Appellate courts review grants of summary judgment de novo using the same standard applied by the trial court in deciding the motion for summary judgment. Schmidt v. Chevez, 00-2456, p. 4 (La.App. 4 Cir. 1/10/01), 778 So.2d 668, 670. According to this standard, a summary judgment shall be granted if the pleadings, *58 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Schmidt, 00-2456 at p. 3, 778 So.2d at 670. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of civil actions. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2).
On appeal, the Department assigns as error the trial court's grant of POI's motion for summary judgment; it contends that there are genuine issues of material fact on three issues: (0 whether the transaction between POI and its customers was a sale in the form of a barter; (ii) whether the customer-supplied gas utilized by POI should be valued at the Louisiana spot market price or whether the gas was free as stated in the form gas compression contract; and (iii) whether title of the gas passed to POI given that the contract does not require POI to return any lost or consumed gas. Alternatively, the Department contends that POI is not entitled to judgment as a matter of law even if the factual issues are decided in POI'S favor. The Department further contends that the trial court erred in following the holding in Hanover Compressor Co. v. Department of Revenue, State of La., 02-0925 (La.App. 3 Cir. 2/5/03), 838 So.2d 876. The Department points out that it issued Statement of Non-Acquiescence No. 04-001, on December 2, 2004, announcing that it did not acquiesce in the Hanover decision.
POI counters that there are no genuine issues of material fact and that the trial court's holding is supported by the Hanover case, which is directly on point. Before addressing the Hanover case, we briefly outline the relevant sales tax principles and statutory provisions.
The Louisiana sales and use tax is an excise tax, which is imposed "upon the transaction itself, not the property involved in the transaction." Bruce J. Oreck, Louisiana Sales & Use Taxation, § 2.1 (2d ed.1996). The Louisiana use tax is assessed on the "cost price" of items used in the state, and the sales tax is assessed on the "sales price" of items sold in the state. The sales and use taxes are complementary taxes designed to "make all tangible property sold or used subject to a uniform tax burden regardless of whether it is acquired inside the state and subject to a sales tax or acquired outside the, state and subject to a use tax." Pensacola Const. Co. v. McNamara, 558 So.2d 231, 232-33 (La.1990).
The term "sale" is defined broadly as "any transfer of title or possession, or both, exchange, barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property, for a consideration." La. R.S. 47:301(12). "In keeping with this definition, a gift or other gratuitous transfer is not a sale." Oreck, supra at § 2.3.
The sales tax is levied upon the sales price of each item or article of tangible personal property when the property is sold at retail in Louisiana. La. R.S. 47:302(A).[6] A "sale at retail" is defined as including "all such transactions as the secretary, upon investigation, finds to be in lieu of sales." La. R.S. 47:301(10). The legislative intent behind this provision is "to classify every sale made to the final user or consumer for any imaginable purpose, *59 other than for resale, as a retail sale or a sale at retail." LAC 61:1.4301. As noted, the amount of the tax is calculated based on the "sales price," which is defined as "the total amount for which tangible personal property is sold . . . including any services, except services for financing, that are a part of the sale valued in money, whether paid in money or otherwise." La. R.S. 47:301(13)(a).
POI contends that there was no transaction pertaining to the compression fuel that satisfied the statutory definition of a sale for sales tax purposesthere was no transfer of title or possession and no consideration for any purported transfer. POI's position is supported by the holding of the Third Circuit in the Hanover case, which involved virtually identical facts, contractual provisions, and sales tax issues. However, under the "law of the circuit" rule, this Third Circuit holding is not binding on this court; rather, it is only persuasive authority. Wilson v. A-1 Industries, Inc., 451 So.2d 1251, 1253 (La. App. 4th Cir.1984). Given the striking similarities between this case and the Hanover case, we find it necessary in deciding this case to first summarize the Hanover case.

THE HANOVER CASE
In Hanover, the Department assessed a compression service company, Hanover Compressor Company, with sales or use taxes on its consumption of the customer-supplied gas mixture it used to fuel its compressors. Hanover challenged the assessment by filing a Petition for Redetermination of the assessment with the Board of Tax Appeals. In its petition, Hanover asserted essentially the same defenses as POI asserts in this case; it asserted the following:
Hanover alleged that they rendered their services pursuant to a contract that provided them with "free use" of the gas mixture that was at all times owned by the customer, the producer of the gas. In the petition, Hanover argued that "there has been no transaction translative of ownership prior to consumption of the gas." Hanover further stated: "Therefore, prior to the consumption of the gas in the compressors, the gas has never been the subject of a "sale" and therefore, cannot be subject to a "use" tax." Hanover alternatively argued that, in the event that a tax was found due, the amount accessed [ (sic) ] by the Department was excessive in that the "cost price" of the mixture was overvalued.
Hanover, 02-0925 at pp. 1-2, 838 So.2d at 877-78.
The Department countered that "if Hanover's customers had not provided the gas mixture for energy purposes, Hanover would have been required to supply its compressors from an outside source, ultimately resulting in higher costs passed along to its customers." Hanover, 02-0925 at p. 2, 838 So.2d at 878. The Department also cited Columbia Gulf Transmission Co. v. Broussard, 94-1650 (La.4/10/95), 653 So.2d 522, in support of its position that natural gas consumed in a gas compression company's service to its customers is subject to taxation.
Vacating the Department's assessment against Hanover, the Board of Tax Appeals reasoned as follows:
There was no evidence to show that the ownership of the gas was transferred from the Customer to Taxpayer. The Contract between Taxpayer and the Customer does not show that there was a change in ownership of the gas. The Board holds that the Taxpayer burns a gas-mixture that belongs to the Customer and, pursuant to the Contract, is not required to pay for the use of the gas-mixture. *60 The Board knows of no prohibition against such an agreement.
There is no sales tax due. As defined by LSA-R.S. 47:301(12), a sale can be a transfer of possession, but the amount of the tax is measured by the Sales Price. The Sales Price is defined by LSA-R.S. 301(13)(a) [as] ". . . the total amount for which tangible personal property is sold. . . ."[7] In this case there is no sales price. . . .
The Secretary attempted to argue that Columbia Gulf . . . was analogous, but the Board finds clear factual distinctions between that case and the subject case. First, Columbia Gulf involved compression of metered gas, whereas in this case, the gas-mixture was not yet metered and with good business reason. Second, the fuel consumed in Columbia Gulf was itself metered; in the instant case the gas-mixture was not metered and, again, with good reason.
Hanover Compressor Co. v. Department of Revenue and Taxation, 2000 WL 33299495, pp. 1-3 (La.Bd.Tax.App.4/5/00).
Both the trial court and the Third Circuit affirmed the Board of Tax Appeal's decision in favor of Hanover. The Third Circuit found that there was a sale and a use for sales tax purposes, but found the lack of either a sales price or value for the compressor fuel precluded the recovery of either a sales or a use tax. Hanover, 02-0925 at p. 10, 838 So.2d at 882. The Third Circuit also noted that the compressor fuel at issue was unmeasured.
The Third Circuit further found no error in the Board's determination that La. Const. Art. VII, § 4 prohibited taxing the compressor fuel finding that the Hanover case was factually analogous to Bel Oil Corp. v. Fontenot, 238 La. 1002, 117 So.2d 571 (1959). In Bel Oil, the Louisiana Supreme Court vacated the assessment of a gas gathering tax on a producer based on the same prohibition contained in the 1921 constitution.
The Third Circuit also distinguished the Supreme Court's decision in Columbia Gulf, which held that taxes were due on customer-supplied compression fuel used by a company that transported natural gas through its interstate pipelines[8]. The Third Circuit found that the Columbia Gulf case was factually distinguishable from Hanover. The consumption at issue in Hanover occurred very early in the process, and was not metered because the gas was not marketable at that early, crude stage. By contrast the gas at issue in Columbia Gulf was metered during the process and appeared to be in a more refined stage. Hanover, 02-0925 at p. 10, 838 So.2d at 882. The Third Circuit also found that the Columbia Gulf case was legally distinguishable from Hanover in that the Supreme Court, which did not address "sales price" in Columbia Gulf, was "squarely answering a `use tax' question on the consumption of the natural gas under La.R.S. 47:305(E) [the interstate commerce exclusion]." Hanover, 02-0925 at p. 10, 838 So.2d at 882.
We disagree with the legal analysis of the court in Hanover, and conclude that *61 there was not only a transfer of possession of the compressor fuel from the customers to POI, but also that there was a barter for a taxable consideration.[9]

TAXABLE BARTER
Barter is defined as "[t]he exchange of one commodity for another without the use of money." Bryan A. Garner, Black's Law Dictionary (8th ed.2004). Barter is also defined as "[a]n exchange of things for things [ (i.e. assets for assets) ], as opposed to a sale of things for money." Daniel Oran, Oran's Dictionary of the Law (1983). By statute, the term "sale" for sales tax purposes is defined to include a barter for consideration. La. R.S. 47:301(12).
It is well settled that "[t]he taxpayer cannot defeat collection of sales taxes by either the wording, form or label of a contract." Monsanto Co. v. St. Charles Parish School Bd., 94-2145, p. 5 (La.2/20/95), 650 So.2d 753, 756. The substance not the wording of the contract is controlling. Id. Applying this principle, we find the wording of POI's gas compression contract that it was to receive the compressor fuel free of charge is not controlling. The contrary finding in Hanover has been criticized: "the [Hanover] court's acceptance of Hanover's assertion that it received the gas free of charge based on the contract as written is somewhat unusual since Louisiana's courts rarely allow the wording of a contract to control the tax consequences of a transaction." David R. Cassidy, Court Says No Tax on Gas Consumed in Processing Gas, 14-May J. Multistate Tax'n 35, 36 (2004)(citing Monsanto, supra.) Despite the wording of the contract between POI and its customers; we find that POT received consideration and that there was a taxable barter.
A contrary finding  that POI received no consideration  would, imply that the transfer of possession of the compressor fuel was a gift or gratuitous transfer, which as noted above is not a sale and thus not taxable. See Oreck, supra. Because businesses generally do not give away their assets, it can be inferred that some type of consideration is present in any exchange of assets that occurs between two business entities. See Eric A. De Moya, Managing Transaction Taxes When Moving Assets in Connection with Mergers and Acquisitions, 17-May J. Multistate Tax'n 24, 28-29 (2007)(citing the Department's Statement of Non-Acquiescence No. 04-001 to the Hanover case).
In this case, the consideration that POI received in exchange for its compression services included not only the flat monthly fee but also the fuel necessary for this process. We are persuaded by the Board's argument that had its customers not provided the gas mixture to power its compressors, POI would have been required to obtain the fuel for the compressors from an outside source, incurring additional expense.[10] It can be inferred that *62 POI factored this saving into the calculation of its monthly rate.[11] Thus, the transaction between POI and its customers with regard to the compressor fuel was a taxable barter.
The finding that there was a taxable barter is supported by the language of POI'S contract in which the possibility that sales or use tax would be imposed on POI'S utilization of the customer-supplied compressor fuel is acknowledged. That contract provides that, in the event such taxes are imposed, the cost of same is expressly passed onto the customer. This contractual provision thus evidences that there was a quid pro quo exchange between POI and the customer regarding the compressor fuel.
Finally, we find that neither La. Const. Art. VII, § 4, which directs that no additional taxes are to be imposed upon the right to produce and market oil and gas in Louisiana, nor Bel Oil, supra, precludes the imposition of a sales tax on the customer-supplied compressor fuel POI used. This constitutional prohibition ceases to apply "once the natural gas upon which severance tax has been paid is purchased by a third party." United Gas Pipe Line Co. v. Whitman, 390 So.2d 913, 918 (La.App. 2d Cir.1980). Given our finding that for sales tax purposes there was a sale to POI of the compressor fuel, it logically follows that the protection from additional taxation provided the producer by La. Const. Art. VII, § 4 is no longer available. See Cassidy, supra (citing United Gas Pipe Line, supra.)> Put differently, although the constitutional protection would have applied to the producer, it does not extend to a third party purchaser such as POI.
In sum, we find the trial court erred in granting summary judgment in POI's favor. As a matter of law, there was a taxable barter between POI and its customers.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
McKAY, J., concurs in the result.
NOTES
[1] Although the Louisiana Department of Revenue alleges in its petition that use taxes are due, the Department concedes in its brief that this case Involves only a claim for sales tax.
[2] The Department alleges in its petition that the taxes due totaled $87, 255.11 and that the interest due calculated to November 20, 2001 totaled $42,397.85.
[3] Mr. Matusek further attested that POI's contract was substantially similar to the contract used during the period 1994 to 1997 by Hanover Compressor Company, which according to POI is "a related compression company and POI's successor." The relevance of the Hanover contract is that in Hanover Compressor Co. v. Department of Revenue, State of La., 02-0925 (La.App. 3 Cir. 2/5/03), 838 So.2d 876, the Third Circuit affirmed the rulings of the trial court and the Louisiana Board of Tax Appeals that Hanover's use of customers-supplied gas mixture to fuel its compressors was not taxable.
[4] The slight discrepancy between this tax figure of $87,384 and the tax figure alleged in the petition of $87,255.11 is not explained in the record. The Department's schedules indicate the total tax due as $87,384.80.
[5] The trial court did not issue reasons for judgment.
[6] It is undisputed that the compressor fuel in question constitutes tangible personal property for sales tax purposes.
[7] As noted elsewhere, the definition of sales price in La. R.S. 47:301(13)(a) is not limited to the dollar amount for which an item is sold; rather, it also includes the cost of "any services, except services for financing, that are a part of the sale valued in money, whether paid in money or otherwise." La. R.S. 47:301(13)(a).
[8] In that case, "compression fuel" was defined to mean "natural gas which is diverted from an interstate pipeline to power the compressors which propel the natural gas through the pipeline." Columbia Gulf, 94-1650 at p. 1, 653 So.2d at 523.
[9] The Department's position is that the instant case is factually distinguishable from Hanover because it was able to calculate the amount of compressor fuel POI used, albeit after the fact and with the help of POI's engineering and operating staff. POI counters that it is undisputed that neither it nor its customers measured or metered the compressor fuel it used to power its compressors. Because our legal analysis differs from that of the court in Hanover we need not determine if this factual distinction is material.
[10] The Department argues that the consideration is implicit in the contractual provision requiring that POI lower its monthly rate if it does not satisfy the "Guaranteed Monthly Mechanical Average" of 95%. We agree with POI that there is no direct relationship between the monthly performance guarantee and POI's flat monthly fee. Rather, the performance guarantee is subject to various other conditions unrelated to the compressor fuel provision.
[11] Although we find that a taxable barter occurred in which POI received a consideration in the form of the compressor fuel, we do not reach the factual issue of the amount of that consideration. Given the procedural posture of this case  the reversal of a summary judgment in favor of the taxpayer, POI  it is unnecessary for us to reach that issue. Moreover, this is a factual issue on which additional evidence should be taken in the trial court.