28 So.3d 1032 (2010)
COLUMBIA GULF TRANSMISSION COMPANY
v.
Cynthia BRIDGES, Secretary, Department of Revenue, State of Louisiana.
No. 2008 CA 1006.
Court of Appeal of Louisiana, First Circuit.
June 25, 2009.
Rehearing Denied December 17, 2009.
*1033 Thomas R. Blum, James A. Burton, John F. Shreves, Simon, Peragine, Smith *1034 & Redfearn, L.L.P., New Orleans, LA, Plaintiff-Appellee, Columbia Gulf Transmission Co.
Robert R. Rainer, Drew M. Talbot, Rainer, Anding & McLindon, Baton Rouge, LA, for Defendant-Appellant, Cynthia Bridges, Secretary, Department of Revenue, State of Louisiana.
Jesse R. Adams, III, Andre B. Burvant, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, LA, for Production Operators, Inc., Amicus Curiae.
Before PARRO, McCLENDON, and WELCH, JJ.
PARRO, J.
At issue in this appeal is whether the Louisiana Department of Revenue (Department) may impose a sales tax on customer-supplied natural gas used by a gas transmission company to power the compressors used in its natural gas pipeline system. After concluding that the "compressor fuel" was not subject to a sales tax, the trial court ordered a refund of the payments of sales taxes that had been made under protest. The Department appealed. For the reasons that follow, we reverse and remand.

Factual Background and Procedural History
Columbia Gulf Transmission Company (Columbia), a Delaware corporation doing business in Louisiana, owned and operated an interstate natural gas transmission system extending from offshore Louisiana through Louisiana, Mississippi, Tennessee, and Kentucky, terminating in northeastern Kentucky. Columbia is regulated by the Federal Energy Regulatory Commission (FERC) and operates pursuant to a Gas Tariff.[1] Columbia received natural gas from production locations in southern and offshore Louisiana and transported the gas through a series of underground high pressure gas pipelines to delivery points along the pipeline. During the journey, the gas being transported loses pressure, requiring recompression at three Louisiana compressor stations. Pursuant to the Gas Tariff, some of the gas being transported in the pipeline was diverted to the compressor stations where it powered Columbia's compressors to maintain the gas pressure in the pipeline. In accordance with the Gas Tariff, Columbia was not charged for its usage of this gas.
On January 2, 2004, Columbia filed this suit against the Department,[2] seeking to recoup $233,263.65 of sales and use taxes paid on December 4, 2003, under protest pursuant to an audit for the 2000 calendar year tax period in connection with the fuel used by its compressors. Columbia alleged that the sales and use taxes in question were unlawfully imposed by the Department and were based on "natural gas spot prices" in calculating the costs of the natural gas used by Columbia to fuel its compressors. In support of this allegation, Columbia indicated that it did not pay any price for the fuel, in that it was "tendered to Columbia Gulf by its shippers without cost." Columbia averred that the Department's use of the spot market price, as opposed to Columbia's cost price of zero, resulted in a violation of LSA-R.S. 47:301. Therefore, Columbia sought a refund of the amount paid under protest.
After the Department filed an answer, Columbia filed a motion for summary judgment *1035 relative to the propriety of the Department's imposition of a sales and use tax on the compressor fuel consumed by Columbia. The Department followed with a cross motion for partial summary judgment, seeking a declaration that Columbia's consumption of compressor fuel belonging to its customers constituted a sale in the form of a barter and was subject to the state's sales tax.
After review of the supporting evidence, the trial court entered judgment in favor of Columbia, granting its motion for summary judgment, denying the Department's cross motion, and awarding Columbia all of the taxes initially paid under protest, as well as all other amounts subsequently paid[3] by Columbia under protest as sales taxes assessed on compressor fuel, together with interest and costs. This appeal by the Department followed.

Discussion
Summary judgments are reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Jarrell v. Carter, 632 So.2d 321, 323 (La.App. 1st Cir.1993), writ denied, 94-0700 (La.4/29/94), 637 So.2d 467. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2); Rambo v. Walker, 96-2538 (La. App. 1st Cir.11/7/97), 704 So.2d 30, 32. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
In support of its motion for summary judgment, Columbia offered the deposition testimony of John M. O'Brien (O'Brien), the assistant controller of Nisource Corporate Services, which housed the administrative overhead functions (specifically the finance areas) of Nisource Inc. (the parent company of Columbia and Nisource Corporate Services). O'Brien was the tax officer for all of the subsidiary companies. According to O'Brien, Columbia was in the business of moving gas from southern points in Louisiana, Mississippi, and Tennessee up to Kentucky. Columbia transported gas for anyone who wanted to move gas along the system. The Gas Tariff detailed the nature in which Columbia operated its business.[4]
Columbia entered into a contract with each of its customers. O'Brien explained that the Gas Tariff and FERC regulations required that contracts with its customers contain certain terms; however, some negotiations between Columbia, its customers, and FERC were allowed. The Gas Tariff precluded Columbia and other transporters of natural gas from buying its compressor fuel from a third party, as their customers were contractually obligated to supply such fuel. Under Section 3 of the FTS-1 Rate Schedule of Columbia's *1036 Gas Tariff, Columbia's customers paid charges and furnished retainage as described in the rate tariff sheets of the Gas Tariff, unless otherwise agreed by the parties in writing. According to O'Brien, the maximum rate a transporter could charge customers was determined by FERC; however, a transporter was free to discount its rate by negotiating with its individual customers. Nevertheless, a transporter could not discount its rate below the transporter's minimum rate.
O'Brien stated that Columbia's customers had to have title to the natural gas when the gas entered the system. Most of the gas that entered the pipelines was pipeline quality gas. Three adjacent pipelines ran north from Louisiana to Kentucky. Along its pipelines in Louisiana, Columbia had three compressor stations located in Rayne, Alexandria, and Delhi. A typical compressor station housed multiple compressors. Columbia had sole possession of the natural gas as it flowed through the pipeline and the compressor stations. O'Brien explained that gas was metered at each receipt and discharge point on Columbia's system. Additionally, the gas that was used to fuel the compressors was measured at each of the three compressor stations. The amount of gas that Columbia was allowed to use in its compressors formed part of the "retainage."[5] Lost and unaccounted-for gas that may have migrated somewhere along the system made up the rest of the retainage.
The amount of the retainage was calculated as a percentage of the gas that was received for transportation and as set forth in the applicable rate tariff sheets. The percent of retainage was non-negotiable and could not be discounted or waived. The transporter could apply for a change in the retainage percentage based on its annual filings with FERC. Customers were given an opportunity to oppose the proposed adjustment. Any adjustment in the retainage percentage had to be approved by FERC. The retainage percentage was based on the previous year's actual retainage and calculated as a percentage of the gas being transported, i.e., its customers would be entitled to two percent less than the gas placed into the system based on a two-percent retainage. Any over or under retainage was taken into account in calculating the next year's retainage percentage. O'Brien explained that over retainage would be accounted for as a liability to its customers in a transportation retainage account of the annual filing with FERC and the following year's retainage percentage would be reduced accordingly.[6] Under retainages resulting in a loss to the transporter would result in an upward adjustment of the retainage percentage for the following year. The annual accounting allowed for the retainage to balance in the long run.
O'Brien stated that pursuant to its contract, Columbia billed its customers and received payment for the charges related to the transportation service. The amount owed to Columbia was calculated by multiplying the monthly quantities ultimately delivered to the customers by the posted tariff rate. Charges were not included for the retainage. According to O'Brien, the value of the fuel forming part of the retainage *1037 was not considered by Columbia to be revenue because it at no point belonged to Columbia. Nonetheless, Columbia admittedly had possession of, and had to account to its customers for, the fuel consumed in its compressors, as well as any other loss in the volume of gas.
In Columbia Gulf Transmission Co. v. Broussard, 94-1650 (La.4/10/95), 653 So.2d 522, 523-24, cert. denied, 516 U.S. 908, 116 S.Ct. 276, 133 L.Ed.2d 196 (1995), the supreme court found that the gas used and owned by Columbia to fuel its compressors was subject to a use tax, as the product was "used" within the terms of LSA-R.S. 47:305(E).[7] According to O'Brien, after the release of the Columbia Gulf case, there was a change in the industry that took the pipeline companies out of the merchant function. O'Brien explained that prior to the change, the transporter purchased the gas to fuel its compressors from the producer or others, put it into the pipeline stream, and commingled that gas with the non-fuel gas being transported for its customers. Pursuant to new regulations, Columbia could no longer purchase compressor fuel from a third party. The fuel was to be provided by its customers out of the gas being transported. In light of this change, the Department maintained that fuel used in Columbia's compressors was now subject to a sales tax rather than a use tax.
Sales and use taxes are consumption taxes, meaning they are intended to apply to the final stage in the sales transaction imposed on specific sales. Sales and use taxes are complementary taxes. The sales tax applies when the taxable transaction is consummated within the taxing jurisdiction. The use tax applies when the transaction is consummated outside the taxing jurisdiction,[8] and the goods are subsequently imported and used in the taxing jurisdiction. Thus, the taxes secure revenues that arise from similar transactions that can occur in different taxing jurisdictions. Sales and use taxes are different in conception and may have to be justified on different constitutional grounds. Word of Life Christian Center v. West, 04-1484 (La.4/17/06), 936 So.2d 1226, 1232-33.
The sales and use tax is an excise tax that is imposed "upon the transaction itself, not the property involved in the transaction." Bridges v. Production Operators, Inc., 07-0648 (La.App. 4th Cir.12/12/07), 974 So.2d 54, 58, citing Bruce J. Oreck, Louisiana Sales & Use Taxation, § 2.1 (2d ed.1996). The Louisiana use tax is assessed on the "cost price" of items used in the state, and the sales tax is assessed on the "sales price" of an item sold in the state.[9]Pensacola Const. Co. v. McNamara, 558 So.2d 231, 232-33 (La.1990).
Louisiana Revised Statute 47:302(A) sets forth the general rule that "[t]here is hereby levied a tax upon the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state, of each item or *1038 article of tangible personal property."[10] The term "sale" is defined broadly as "any transfer of title or possession, or both, exchange, barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property, for a consideration." LSA-R.S. 47:301(12). In keeping with this definition, a gift or other gratuitous transfer is not a sale. Production Operators, Inc., 974 So.2d at 58, citing Oreck, Louisiana Sales & Use Taxation at § 2.3.
A sales tax is a single-stage tax on consumer spending that applies to final sales in Louisiana for personal use and consumption. The sales tax is a tax imposed on the buyer's use or consumption of the item sold, that is passed on to the buyer or consumer through the addition of the sales tax to the purchase price. Word of Life Christian Center, 936 So.2d at 1233. The state sales tax is levied at a fixed rate based on the sales price of each item or article of tangible personal property when the property is sold at retail in Louisiana. LSA-R.S. 47:302(A). A "sale at retail" means a sale to a consumer or to any other person for any purpose other than for resale as tangible personal property, and "shall mean and include all such transactions as the secretary, upon investigation, finds to be in lieu of sales." LSA-R.S. 47:301(10)(a)(i). The legislative intent behind this provision is to classify every sale made to the final user or consumer for any imaginable purpose, other than for resale, as a retail sale or a sale at retail. See LAC 61:I.4301(C). As noted, the amount of the tax is calculated based on the "sales price," which is defined as "the total amount for which tangible personal property is sold, less the market value of any article traded in including any services, except services for financing, that are a part of the sale valued in money, whether paid in money or otherwise." LSA-R.S. 47:301(13)(a).
It is undisputed that the compressor fuel in question constituted tangible personal property for sales and use tax purposes. Furthermore, all of the gas at issue in this litigation is extracted directly from the interstate pipeline system, metered, and consumed immediately to power the compressor stations in order to propel the balance of the gas stream through and beyond the state of Louisiana. This gas was supplied to Columbia by agreement between Columbia and its customers, who owned the gas. Columbia argued the imposition of the sales tax was impermissible under the Louisiana sales tax statutes, primarily based on the fact that Columbia's customers at all times retained ownership of the gas being transported.
The taxability of natural gas consumed in providing compressor services was addressed in Hanover Compressor Co. v. Department of Revenue, State of Louisiana, 02-0925 (La.App. 3rd Cir.2/5/03), 838 So.2d 876, and Production Operators, Inc., 974 So.2d 54. Hanover Compressor Company (Hanover) and Production Operators, Inc. (POI) provided gas compression services to companies engaged in the exploration and production of natural resources in Louisiana. In both cases, the courts considered whether the natural gas mixture that was owned and supplied by the producers and consumed by Hanover and POI in providing compressor services was subject to a sales or use tax.
*1039 In Hanover, the Board of Tax Appeals (Board) had found that the statutory definitions of both "sale" and "use" were met, that there had been a transfer of possession for sales tax purposes, and that there was no associated "sales price"; therefore, no sales tax was due. Hanover, 838 So.2d at 878 and 882. After the district court affirmed the decision of the Board, the Department appealed and challenged the following findings of the Board, which precluded recovery of the tax:(1) the taxing of Columbia's use of the gas mixture in Columbia Gulf was distinguishable from the facts presented in this case; (2) Hanover's consumption of gas constituted a transfer of possession for sales tax purposes; (3) LSA-Const. art. VII, § 4(B) precluded the imposition of any tax; and (4) the cost price of the gas used was $0 for purposes of assessing use taxes. Finding the Columbia Gulf use tax case inapplicable to the issue of a sales tax, the court in Hanover found that the Department's assignment of error regarding the applicability of Columbia Gulf with respect to the imposition of sales taxes lacked merit. Hanover, 838 So.2d at 882. Article VII, § 4(B) of the Louisiana Constitution permits a tax on the severance of natural resources, but dictates that "[n]o further or additional tax or license shall be levied or imposed upon oil, gas, or sulphur leases or rights." In Bel Oil Corp. V. Fontenot, 238 La. 1002, 117 So.2d 571 (1959), the supreme court found that the tax on Bel Oil Corporation's processing and transporting of gas constituted the imposition of a gas gathering tax that was imposed on the transportation of gas after its severance from the well to the first meter at or near the well. Based on testimony that consumption in Hanover occurred at the wellhead, that the gas was in an unpurified form, and that it had not yet been metered, the Hanover court found that the factual situation presented in Hanover was generally the same as that in Bel Oil Corp. Therefore, the Department was constitutionally prohibited from taxing the gas in question. Hanover, 838 So.2d at 883. After considering the definition of "cost price" set forth in LSA-R.S. 47:301(3)(a), the Hanover court found no error in the Board's findings that the actual cost was zero, since the gas mixture was supplied by the customers, and that no taxes were due. Hanover, 838 So.2d at 884. The third circuit affirmed the judgment of the district court.
In Production Operators, Inc., the Department appealed from the district court's granting of a summary judgment in favor of the compressor service company and vacating the Department's assessment of sales taxes. On appeal, the Department urged that genuine issues of material fact remained as to the following: (1) whether the transaction between POI and its customers was a sale in the form of a barter; (2) whether the customer-supplied gas utilized by POI should be valued at the Louisiana spot market price or whether the gas was free as stated in the gas compression contract; and (3) whether title of the gas passed to POI, given that the contract did not require POI to return any lost or consumed gas. Production Operators, Inc., 974 So.2d at 58.
After considering the relevant sales tax principles, statutory provisions, and the Hanover case, the court in Production Operators, Inc. concluded that there was a transfer of possession of the compressor fuel from the customers to POI and a barter for a taxable consideration. Production Operators, Inc., 974 So.2d at 60-61. The court reasoned:
Barter is defined as "[t]he exchange of one commodity for another without the use of money." Bryan A. Garner, Black's Law Dictionary (8th ed.2004). Barter is also defined as "[a]n exchange of things for things [(i.e. assets for assets)], *1040 as opposed to a sale of things for money." Daniel Oran, Oran's Dictionary of the Law (1983). By statute, the term "sale" for sales tax purposes is defined to include a barter for consideration. La. R.S. 47:301(12).
It is well settled that "[t]he taxpayer cannot defeat collection of sales taxes by either the wording, form or label of a contract." Monsanto Co. v. St. Charles Parish School Bd., 94-2145, p. 5 (La.2/20/95), 650 So.2d 753, 756. The substance not the wording of the contract is controlling. Id. Applying this principle, we find the wording of POI's gas compression contract that it was to receive the compressor fuel free of charge is not controlling.... Despite the wording of the contract between POI and its customers, we find that POI received consideration and that there was a taxable barter.
A contrary findingthat POI received no considerationwould imply that the transfer of possession of the compressor fuel was a gift or gratuitous transfer, which as noted above is not a sale and thus not taxable. See Oreck, supra. Because businesses generally do not give away their assets, it can be inferred that some type of consideration is present in any exchange of assets that occurs between two business entities. See Eric A. De Moya, Managing Transaction Taxes When Moving Assets in Connection with Mergers and Acquisitions, 17-May J. Multistats Tax'n 24, 28-29 (2007)(citing the Department's Statement of Non-Acquiescence No. 04-001 to the Hanover case).
In this case, the consideration that POI received in exchange for its compression services included not only the flat monthly fee but also the fuel necessary for this process. We are persuaded by the Board's argument that had its customers not provided the gas mixture to power its compressors, POI would have been required to obtain the fuel for the compressors from an outside source, incurring additional expense. It can be inferred that POI factored this saving into the calculation of its monthly rate. Thus, the transaction between POI and its customers with regard to the compressor fuel was a taxable barter. [Footnotes omitted.]
Production Operators, Inc., 974 So.2d at 61-62. Although the fourth circuit found that a taxable barter occurred in which POI received consideration in the form of the compressor fuel, it did not determine the amount of that consideration[11] in light of the procedural posture of the case.[12]See Production Operators, Inc., 974 So.2d at 62 n. 11. The court further noted that the constitutional prohibition found in LSA-Const. art. VII, § 4(B), ceased to apply once the natural gas on which the severance tax had been paid was purchased by a third party. Production Operators, Inc., 974 So.2d at 62, citing United Gas Pipe Line Co. v. Whitman, 390 So.2d 913, 918 (La.App. 2nd Cir.1980), writs denied, 396 So.2d 928, 929 (La.1981). Since, for sales tax purposes, there was a sale to POI of the compressor fuel, the court concluded that neither LSA-Const. art. VII, § 4(B), nor Bel Oil Corp. precluded the imposition of a sales tax on the *1041 customer-supplied compressor fuel used by POI, a third party purchaser. See Production Operators, Inc., 974 So.2d at 62.
The sales tax laws define a sale as "any transfer of title or possession, or both, exchange, barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property, for a consideration." LSA-R.S. 47:301(12). This definition is much broader than the definition of "sale" found in the Louisiana Civil Code, which states that a "[s]ale is a contract whereby a person transfers ownership of a thing to another for a price in money." LSA-C.C. art. 2439. We recognize that laws regulating the collection of taxes are sui generis and constitute a system to which the general provisions of the Louisiana Civil Code have little, if any, application. Church Point Wholesale Beverage Co., Inc. v. Tarver, 614 So.2d 697, 708 (La.1993). However, the terms "barter and exchange" are not defined in the sales tax laws. The Production Operators, Inc. court found that a barter is the exchange of one commodity for another without the use of money. Production Operators, Inc., 974 So.2d at 61, citing Black's Law Dictionary. An exchange is "[t]he act of transferring interests, each in consideration for the other." Bryan A. Garner, Black's Law Dictionary (7th ed.1999). Furthermore, the Louisiana Civil Code defines an exchange as a "contract, by which the parties to the contract give to one another, one thing for another, whatever it be, except money; for in that case it would be a sale." LSA-C.C. art. 2660. The transfer of a thing in return for services to be rendered is neither a sale as defined in LSA-C.C. art. 2439 nor an exchange, but an innominate contract. See LSA-C.C. art. 2464, Revision Comments1993, comment (c); see also LSA-C.C. art. 1914.
The record establishes that Columbia provided transmission services to its customers pursuant to the Gas Tariff and received the charges set forth under the rate schedule in the Gas Tariff. Had Columbia's customers not provided the fuel to power Columbia's compressors, Columbia would have been required to obtain the fuel from an outside source, incurring additional expense. In turn, it would have had to pass that cost on to its customers by charging them more for its transmission services. Obviously, it can be reasonably inferred that this saving, by the elimination of the compressor fuel expenses, was factored into the rate schedule in the Gas Tariff. Columbia was contractually obliged to transport gas for its customers and to account to those customers for the disparity in the volume of gas that was received into the pipeline and the volume of gas that was ultimately delivered. This disparity was created by Columbia's consumption of a volume of gas for fuel in its compressors and by any other loss in the total volume of gas. With the approval of FERC, adjustments were made to the next year's retainage percentage for under and over retainages. The fact that the terms of Columbia's contracts with its customers were mandated by the FERC regulations does not render the sales tax laws of this state inapplicable once the taxing jurisdiction of Louisiana was invoked. See Columbia's Gas Tariff, Second Revised Volume No. 1, General Terms and Conditions, Section 27.[13]
Because the transfers of gas to power Columbia's compressors did not involve the exchange of one commodity (thing) for *1042 another commodity (thing other than money), we do not find that they constituted a barter[14] or an exchange. Nonetheless, the transfers would constitute an element of a sale if they involved the "transfer of title or possession" of the gas. Clearly, upon receipt of the gas into its pipeline, Columbia obtained physical control and possession of the gas and retained such control and possession until the gas was redelivered to its customers at the points of delivery. See Columbia's Gas Tariff, Second Revised Volume No. 1, General Terms and Conditions, Section 22.[15] The transfer of control and possession of the gas was necessary for its transportation. Certainly, the transfer of the possession of the gas for transportation purposes is not the type of transfer contemplated by LSA-R.S. 47:301(12). However, during the course of transportation, some of the gas that was received into Columbia's pipelines was removed from the stream of interstate commerce[16] in the pipelines for use and consumption as fuel by Columbia in providing compression services needed to facilitate the underlying transportation service being provided to Columbia's customers. At that point in time, the nature of Columbia's possession of the removed gas changed, in that Columbia had authority to exercise rights of ownership of that gas, although limited under the terms of the Gas Tariff. Accordingly, we conclude that the removal of the gas from the stream of interstate commerce for purposes of consumption by Columbia in the providing of compression services constituted a "transfer of title or possession" as set forth in LSA-R.S. 47:301(12). Moreover, the taxing jurisdiction of Louisiana was invoked.
Nothing in the record supports a finding that this transfer of gas was gratuitous. As noted in Production Operators, Inc., businesses generally do not give away their assets; therefore, it can be inferred that "a consideration" was present in the transfers of gas from the customers to Columbia for compressor fuel. See Production Operators, Inc., 974 So.2d at 61. In return for its total transmission services, Columbia received the monetary consideration paid directly to it as determined by the rate schedule in the Gas Tariff, as well as the fuel necessary for the compression services. On the other hand, it can also be inferred that "a consideration" was present when the customers received the total transmission services seemingly at a reduced rate, since the market value of the gas necessary to fuel Columbia's compressors was factored into the rate schedule. Accordingly, we conclude that the transfers of its gas by the customers to Columbia constituted a sale as defined by LSA-R.S. 47:301(12), because *1043 all elements of a sale were present, namely, the transfer of title or possession of tangible personal property for "a consideration."
The amount of the sales tax is calculated based on the "sales price." LSA-R.S. 47:302(A)(1). In this case, the sales price would be initially determined by considering the total amount for which the compressor fuel was sold. See LSA-R.S. 47:301(13)(a). Since the Gas Tariff provided for the transfer of the compressor fuel without a charge to be paid by Columbia for such fuel, Columbia asserted that a sales price was lacking in this case. Particularly, Columbia urges that LSA-R.S. 47:301 et seq. does not authorize the imposition of a sales tax on the value of the compressor fuel. This argument focuses on the distinction between the "cost price" used in assessing a use tax and the "sales price" used in assessing a sales tax. See LSA-R.S. 47:301(3)(a) and (13). Since we have found the transaction constituted a sale, we focus our discussion on a determination of the sales price, if any.
"Sales price" means "the total amount for which tangible personal property is sold, less the market value of any article traded in including any services ... that are a part of the sale valued in money, whether paid in money or otherwise." LSA-R.S. 47:301(13)(a). Columbia proposes that the compressor fuel was not "sold" for an "amount" since the fuel was provided to it at no charge pursuant to the provisions of the Gas Tariff. As with barters and exchanges, we are in this case dealing with a sale that did not involve the transfer of money for a set price. The absence of a set price in transactions of this nature does not prevent the occurrence of a sale so long as the transaction is supported by some type of consideration. Clearly, the sales price can be paid in money "or otherwise," such as "the market value of any article traded in including any services ... that are a part of the sale valued in money, whether paid in money or otherwise." See LSA-R.S. 47:301(13)(a) (emphasis added). To find differently would be to limit the definition of sales price for sales tax purposes to a price in money as set forth in the definition of sale found in LSA-C.C. art. 2439.
The only evidence in the record as to valuation is in the testimony by O'Brien that the taxable amount is determined by multiplying the amount of metered gas that has been used by the compressors by the value prescribed by the state. He explained that the spot market price is usually a price that changes daily depending on market conditions. However, the calculation of a "sales price" does not end with a determination of the total amount for which the compressor fuel was "sold" to Columbia. Once that total amount is established, it is subject to reduction for any "services" received by Columbia's customers "valued in money, whether paid in money or otherwise." See LSA-R.S. 47:301(13)(a). The calculation of the services "valued in money" should be based on that portion of the true total value or cost to Columbia of the transmission services for which it did not directly charge its customers in consideration of the factoring into the rate schedule of the value of the gas necessary to fuel Columbia's compressors. In the absence of any other evidence as to the true total value of the transmission services provided by Columbia, we are unable to determine if the "sales price" was $0.[17] Due to the genuine issues of material fact relating to this issue, *1044 we conclude the trial court erred in granting summary judgment in Columbia's favor.

Decree
For the foregoing reasons, the summary judgment in favor of Columbia Gulf Transmission Company is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed to Columbia Gulf Transmission Company.
REVERSED AND REMANDED.
McCLENDON J. concurs and assigns reasons by law.
McCLENDON, J., concurs and assigns reasons.
I respectfully concur. I find that there was a transfer of possession for consideration, which falls within the broad definition of sale set forth in LSA-R.S. 47:301(12). Therefore, I do not believe it necessary to reach the issue of whether a taxable barter or exchange occurred or to reanalyze Bridges v. Production Operators, Inc., 07-0648 (La.App. 4 Cir. 12/12/07), 974 So.2d 54.
NOTES
[1] See 18 C.F.R. § 154.1 et seq. The FERC Gas Tariff or tariff means a compilation, on electronic media, of all of the effective rate schedules of a particular natural gas company, and a copy of each form of service agreement. 18 C.F.R. § 154.2(b).
[2] See LSA-R.S. 47:1576.
[3] Pursuant to an agreement to abide that was executed by the parties on March 14, 2004, Columbia has paid monthly, under protest, the proposed sales taxes due on the compressor fuel used to power its compressors.
[4] According to O'Brien, from an operations standpoint, the tariff that was in effect during the 2000 calendar year is essentially the same as it is today. Since the initial tax period in question in this case was the calendar year 2000, the Gas Tariff that was in effect at that time will be utilized in this opinion.
[5] Columbia's Gas Tariff defines retainage as "the quantity of gas, expressed as a percentage of receipt quantities, Shipper must provide Transporter (in addition to quantities Transporter will deliver to Shipper) for company-use, lost and unaccounted-for quantities under any of Transporter's Rate Schedules that refer to such term." Columbia's Gas Tariff, Second Revised Volume No. 1, General Terms and Conditions, Section 1.30.
[6] Columbia was not allowed to retain gas from its customers that was not utilized in the compression services.
[7] As soon as the gas was removed from the stream of interstate commerce in Louisiana, it acquired a taxable situs and was subject to Louisiana's use tax since Columbia owned the gas.
[8] Tangible personal property purchased outside of the taxing jurisdiction of Louisiana, such as purchases made in another state or purchases made in interstate commerce, are not subject to the imposition of a sales or use tax in Louisiana unless such property is brought into Louisiana or taken out of interstate commerce in Louisiana.
[9] See LSA-R.S. 47:301(3) and (13)(a) and 302(A)(1) and (2). Since the tax period in question, Section 301 has been subjected to numerous amendments by the legislature.
[10] It seems the underlying principle in the sales and use tax cases is that tangible personal property must have been acquired by a natural person or a juridical person in a transaction that is deemed to constitute a "sale," and such property must have a taxable situs in Louisiana before it is subject to the imposition of a sales or use tax. See LSA-R.S. 47:302(A)(1) and (2).
[11] We note that the fourth circuit also did not determine the value of the compression services received as consideration by POI's customers.
[12] Based on a finding that, as a matter of law, there was a taxable barter between POI and its customers, the appellate court in Production Operators, Inc. found that the district court erred in granting summary judgment in POI's favor. Production Operators, Inc., 974 So.2d at 62.
[13] Section 27 states:

This Tariff, including the Rate Schedules, the General Terms and Conditions, and the respective obligations of the parties under the Service Agreements and assignment Agreements, is subject to all valid laws, orders, rules, and regulations of duly constituted authorities having jurisdiction.
[14] Accordingly, we disagree with the fourth circuit's finding in Production Operators, Inc. that a taxable barter occurred.
[15] Section 22 provides:

After Shipper delivers gas or causes gas to be delivered to Transporter at the point(s) of receipt specified in the Service Agreement, Transporter shall be deemed to be in control and possession of the gas until thermally equivalent quantities (less Retainage) are redelivered to Shipper or for the account of Shipper at the point(s) of delivery. Shipper shall have no responsibility with respect to any gas deliverable by the Transporter or on account of anything which may be done, happen, or arise with respect to such gas until Transporter delivers such gas to Shipper or for the account of Shipper. Transporter shall have no responsibility with respect to such gas before Shipper delivers or causes such gas to be delivered to Transporter or after Transporter redelivers such gas to Shipper or for the account of Shipper, or on account of anything which may be done, happen, or arise with respect to such gas before such delivery or after such redelivery.
[16] Upon removal from interstate commerce, the gas acquired a taxable situs in Louisiana.
[17] If the forgone charges for transmission services by Columbia equaled or exceeded the total amount for which the compressor fuel was "sold," then the sales price would be $0. This determination cannot be made without considering the over and/or under retainages for the years in question.