STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 1530

JAZZ CASINO COMPANY, L.L.C.

VERSUS

CYNTHIA BRIDGES, IN HER CAPACITY AS THE SECRETARY
FOR THE LOUISIANA DEPARTMENT OF REVENUE, AND THE
LOUISIANA DEPARTMENT OF REVENUE

CONSOLIDATED WITH

2019 CA 1531

JCC FULTON DEVELOPMENT, L.L.C.

VERSUS

CYNTHIA BRIDGES, IN HER CAPACITY AS THE SECRETARY OF
THE LOUISIANA DEPARTMENT OF REVENUE, AND THE
LOUISIANA DEPARTMENT OF REVENUE

CONSOLIDATED WITH

2019 CA 1532

JAZZ CASINO COMPANY, L.L.C.

VERSUS

TIM BARFIELD, IN HIS CAPACITY AS THE ACTING SECRETARY
AND EXECUTIVE COUNSEL FOR THE LOUISIANA
DEPARTMENT OF REVENUE, AND THE LOUISIANA
DEPARTMENT OF REVENUE

CONSOLIDATED WITH

Theriot, J. Dissents & Assigns reasons

2019 CA 1533

JCC FULTON DEVELOPMENT, L.L.C.

VERSUS

TIM BARFIELD, IN HIS OFFICIAL CAPACITY AS THE ACTING
SECRETARY AND EXECUTIVE COUNSEL FOR THE LOUISIANA
DEPARTMENT OF REVENUE, AND THE LOUISIANA
DEPARTMENT OF REVENUE

CONSOLIDATED WITH

2019 CA 1534

KIMBERLY L. ROBINSON, IN HER OFFICIAL CAPACITY AS
SECRETARY OF THE LOUISIANA DEPARTMENT OF REVENUE,
AND THE LOUISIANA DEPARTMENT OF REVENUE
VERSUS
JAZZ CASINO COMPANY, L.L.C. AND JCC FULTON
DEVELOPMENT, L.L.C.

*DATE OF JUDGMENT:*    JUL 2 9 2020

ON APPEAL FROM THE NINETEENTH JUDICIAL DISTRICT COURT
NUMBER 597371, 597372, 622075, 622076 AND 670597, SECTION 23,
PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

HONORABLE WILLIAM A. MORVANT, JUDGE

* * * * * *

Jesse R. Adams, III
Andre B. Burvant
New Orleans, Louisiana

Counsel for Plaintiffs-Appellants
Jazz Casino Company, L.L.C. and
JCC Fulton Development, L.L.C.

Martin A. Stern
Jeffrey Edward Richardson
New Orleans, Louisiana

Drew M. Talbot
Robert R. Rainer
Baton Rouge, Louisiana

Counsel for Defendant-Appellee
Louisiana Department of Revenue

* * * * * *

BEFORE:  McDONALD, THERIOT, AND CHUTZ, JJ.

**Disposition: AFFIRMED.**

2

**CHUTZ, J.**

Plaintiffs-appellants, Jazz Casino Company, L.L.C. (Jazz) and JCC Fulton Development, L.L.C. (JCC Fulton) (collectively Harrah's) appeal the trial court's judgment, granting a motion for partial summary judgment filed by the Louisiana Department of Revenue (Department) and declaring that Harrah's owed sales and occupancy taxes collected by the Department on all discounted and complimentary hotel rooms furnished to patrons at Harrah's New Orleans Hotel as well as certain third-party hotels during specified tax periods.[1] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Jazz Casino Company, L.L.C. operates the only land-based casino in Louisiana located in the City of New Orleans (the City).[2] After the original casino operator filed a voluntary petition seeking relief under the U.S. Bankruptcy Code,[3] Jazz entered into an amended casino operating contract with the State of Louisiana through the Louisiana Gaming Control Board (Gaming Board) in October 1998. Despite the amendment to the contract, in January 2001, Jazz filed a voluntary

---

[1] This litigation was initiated when Jazz filed its petition on December 10, 2010, seeking a refund of taxes it paid under protest for non-hotel-room complimentary services it provided to patrons from January 1, 2004 through June 30, 2007, naming as defendants both the Department and Cynthia Bridges in her capacity as Secretary of the Department. On June 5, 2013, Jazz filed another petition, seeking a refund of taxes it paid under protest for non-hotel-room complimentary services it provided to patrons between December 31, 2007 and December 31, 2010, naming as defendants both the Department and Tim Barfield in his capacity as Acting Secretary and Executive Counsel of the Department. Additionally, on December 10, 2010, JCC Fulton filed a petition, seeking a refund of taxes paid under protest for complimentary hotel rooms it provided to patrons between September 1, 2006 and December 31, 2007, naming as defendants both the Department and Cynthia Bridges in her capacity as Secretary of the Department. On June 5, 2013, JCC Fulton filed another petition, seeking a refund of taxes it paid under protest for complimentary hotel rooms it provided to patrons between January 1, 2008 and December 31, 2010, naming as defendants both the Department and Tim Barfield in his capacity as the Acting Secretary and Executive Counsel of the Department. On June 19, 2018, both the Department and Kimberly L. Robinson in her capacity as Secretary of the Department filed the petition for declaratory judgment under scrutiny in this appeal, which named Jazz and JCC Fulton as defendants. All the suits were transferred and consolidated into the initial suit.

[2] See La. R.S. 27:240(4) (providing for the operation of a single official land-based gaming establishment by a nongovernmental entity).

[3] The original casino operating contract was entered into with Harrah's Jazz Company and Jazz as the casino operators. As part of the first bankruptcy, Harrah's Jazz Company's assets vested in Jazz.

3

petition seeking bankruptcy protection. As part of the bankruptcy plan, Jazz sought relief from its contractual obligations to the State including an amendment to the laws that prohibited Harrah's from, among other things, providing lodging and furnishing sleeping rooms to the public.

Thereafter, the Louisiana Legislature convened the First Extraordinary Session of 2001 and the Governor of Louisiana signed Act 1 into law, effective March 21, 2001. See La. Acts 2001, 1st Ex.Sess., No. 1, § 2. Among the provisions of Act 1 were those contained in the enactment of La. R.S. 27:241.1, which provided that, notwithstanding any law to the contrary:

> effective midnight March 31, 2001, the minimum compensation to be paid by the casino operator to the [Gaming Board] shall be the greater of: (i) eighteen and one-half percent of gross revenues or (ii) fifty million dollars for the casino fiscal year April 1, 2001 through March 31, 2002 and sixty million dollars for each casino fiscal year thereafter.

It is undisputed that prior to Act 1, the casino operator was required to pay the State a minimum compensation in the amount of $100,000,000 annually.

In addition to the downward adjustment of the casino operator's annual payment to the State, Act 1 amended and reenacted La. R.S. 27:243, removing the prohibition against the gaming casino operator's provision of lodging and the furnishing of hotel sleeping rooms. For the first time, the gaming casino operator was permitted to own or operate offsite lodging physically connected to the official gaming establishment, but subject to certain conditions. See La. R.S. 27:243(C)(1)(i)(2).[4] Among the conditions were the following provisions set forth in Subsection (e):

> Room taxes shall be paid by the casino gaming operator on all discounted and complimentary rooms to be paid at the applicable tax rates based upon average seasonal rates for the preceding year of

---

[4] La. R.S. 27:243 was subsequently modified by La. Acts 2019, No. 171, § 1. All references in this opinion are to the version in effect prior to its amendment and reenactment in 2019.

hotels in the Central Business District and French Quarter of the parish of the official gaming establishment.

Harrah's subsequently built its New Orleans Hotel, which was operated by JCC Fulton. And as part of its business operations, Harrah's at times provided complimentary and discounted hotel rooms to patrons at its New Orleans Hotel.

Although Harrah's had been paying the room taxes collected by the City pursuant to a Memorandum of Understanding (MOU) that it entered into with the Greater New Orleans Hotel-Motel Association in March 2001,[5] it did not contemporaneously remit any of the room taxes that the Department collected.[6] These included the State sales tax as well as an occupancy tax on hotel room rentals in Jefferson and Orleans parishes for the Louisiana Stadium and Exposition District (LSED) and an additional tax on hotel and motel room rentals in Orleans Parish for the New Orleans Exhibition Hall Authority (NOEHA) during the relevant tax periods (collectively the State-collected room taxes).[7]

In addition to the complimentary hotel rooms at the New Orleans Hotel provided by Harrah's to its patrons, the Department also claimed that State-collected room taxes were owed on hotel rooms that Harrah's provided

---

[5] Since the commencement of operations at New Orleans Hotel, Harrah's remitted the 4% Hotel-Motel Tax and the Hotel Occupancy Privilege Tax levied by the City.

[6] A statutory tax is levied on all sales of services on the amounts paid or charged, and it applies to "[t]he furnishing of sleeping rooms ... by hotels." See La. R.S. 47:301(14)(a). "Hotel" means and includes, among other things, any establishment or person engaged in the business of furnishing sleeping rooms to transient guests. See La. R.S. 47:301(6)(a).

[7] The State's sales tax is imposed on the furnishing of sleeping rooms by La. R.S. 47:321, 331, and 51:1286. See also La. Const. Ann. 1921 art. XIV, § 47(M) (providing that the imposition of LSED hotel occupancy tax is in lieu of two percent State sales tax levied on hotel/motel room rentals by La. R.S. 47:302). La. Acts 1966, No. 556; Acts 1991, No. 624; Acts 1992, No. 1099; Acts 1993, No. 640; and Acts 1995, No. 1191 authorize the LSED to collect a tax of 4 percent of the gross proceeds from hotel and motel room rentals in the parishes of Orleans and Jefferson. La. Acts 1978, No. 305; Acts 1980, No. 99; Acts 1987, No. 390; and Acts 2002 1st Ex. Sess., No. 72 authorize the NOEHA to collect a tax of 3 percent on the gross proceeds from hotel and motel room rentals in Orleans parish. The Department is required to collect the 4 percent room occupancy tax and distribute it to the LSED as well as the 3 percent room occupancy tax that it is required to distribute to the NOEHA. See LAC 61:III.1517(A) & (B).

complimentarily to its patrons which it obtained through contracts it entered into with certain third-party hotel companies (third-party hotels), reserving blocks of hotel rooms and for which Harrah's paid hotel room taxes collected by both the City and the Department based on the contractual amount it paid to the third-party hotels.

On June 18, 2018, the Department filed a petition for declaratory relief and to recover taxes, urging that under the provisions of La. R.S. 27:243(C)(1)(i)(2)(e), Harrah's owed all State-collected room taxes based on the average seasonal rates from the preceding year of hotels in the Central Business District (CBD) and the French Quarter. The Department sought declarations that during the relevant tax periods, through the current date, pursuant to La. R.S. 27:243(C)(1)(i)(2)(e), Harrah's owed the State-collected room taxes to the Department for all discounted or complimentary hotel rooms furnished by Harrah's to patrons at (1) the New Orleans Hotel and (2) third-party hotels.[8] Harrah's answered the Department's petition, raising as defenses, among others, the constitutionality of the Department's interpretation of La. R.S. 27:243(C)(1)(i)(2)(e) and "the clarity" of the term "room taxes" as set forth in Subsection (e).

On September 25, 2018, the Department filed a motion for partial summary judgment, averring entitlement to the two declarations that it sought in its declaratory judgment petition. On March 18, 2019, Harrah's filed a cross-motion for partial summary judgment seeking, among other things, dismissal of the Department's claims.

A hearing was held on the parties' cross-motions. On August 9, 2019, the trial court signed a judgment, granting the Department's motion for partial

---

[8] On January 31, 2019, the Department supplemented the petition for declaratory judgment and to recover taxes to more fully set forth the bases for declaratory relief as well as its request for a money judgment for room taxes it alleged that Harrah's had incurred between January 1, 2017 through December 31, 2018.

summary judgment. The judgment declared that Harrah's owes State-collected room taxes from: (1) September 1, 2006 through December 31, 2018 on all discounted and complimentary rooms furnished by Harrah's to its patrons at the New Orleans Hotel in an amount to be determined at trial; and (2) July 1, 2007 through December 31, 2018 on all discounted and complimentary rooms furnished by Harrah's to patrons at certain third-party hotels in an amount to be determined at trial. Harrah's cross-motion for partial summary judgment was denied. Harrah's appeals.[9]

## DISCUSSION

On appeal, Harrah's asserts the trial court's interpretation of La. R.S. 27:243(C)(1)(i)(2)(e) renders its provisions unconstitutional or raises grave constitutional questions under the Louisiana Constitution insofar as its application to discounted or complimentary rooms at both Harrah's New Orleans Hotel and third-party hotels. Thus, Harrah's maintains the trial court erred in granting partial summary judgment as requested by the Department.

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Beer Indus. League of Louisiana v. City of New Orleans*, 2018-0280 (La.

---

[9] The judgment was designated as final for purposes of immediate appeal based on the trial court's express findings, after a hearing, that the decided issues, which are distinct and separate from those remaining, are purely legal and, therefore, readily reviewed on appeal, and that outstanding discovery and other unnecessary expenses may be avoided as a result of immediate appellate review thereby promoting judicial efficiency. We find no abuse of discretion. See *R.J. Messinger, Inc. v. Rosenblum*, 2004-1664 (La. 3/2/05), 894 So.2d 1113, 1122. Thus, issues related to the propriety of the Department's proposal that taxes are due on non-hotel-room complimentary services provided by Harrah's are not before us in this appeal. See n.1, supra.

6/27/18), 251 So. 3d 380, 385-86. Because constitutional issues should not be used to resolve disputes when they are resolvable by resolution of other issues, see *Mid-City Auto., L.L.C. v. Dep't of Pub. Safety & Corr.*, 2018-0056 (La. App. 1st Cir. 11/7/18), 267 So.3d 165, 178, we must first examine Harrah's assertions relative to the propriety of the trial court's interpretation of La. R.S.27:243(C)(1)(i)(2)(e).

## STATUTORY INTERPRETATION

The interpretation of a statute is a question of law that may be decided by summary judgment. When addressing legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law de novo, after which it renders judgment on the record. *Bannister Properties, Inc. v. State*, 2018-0030 (La. App. 1st Cir. 11/2/18), 265 So.3d 778, 788, writ denied, 2019-0025 (La. 3/6/19), 266 So.3d 902.

The fundamental issues in all cases of statutory interpretation are legislative intent and the ascertainment of the reason or reasons that prompted the legislature to enact the law. The rules of statutory construction are designed to ascertain and enforce the intent of the legislature. Legislation is the solemn expression of legislative will and, therefore, interpretation of a law involves primarily a search for the legislature's intent. *Montgomery v. St. Tammany Par. Gov't*, 2017-1811 (La. 6/29/18), --- So.3d ----, ----. But when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. *Id.* See La. C.C. art. 9. This principle applies to tax statutes. *Tarver v. E.I. Du Pont De Nemours & Co.*, 634 So.2d 356, 358 (La. 1994). It is only when the language of the law is susceptible of different meanings that it must be interpreted as having the meaning that best conforms to the purpose of the law, and

the words of law must be given their generally prevailing meaning. See La. C.C. arts. 10 and 11; *Bannister Properties, Inc.*, 265 So.3d at 790.

Legislative language will be interpreted on the assumption that the legislature was aware of existing statutes, well-established principles of statutory construction, and with knowledge of the effect of their acts and purpose in view. *M.J. Farms, Ltd. . v. Exxon Mobil Corp.*, 2007-2371 (La. 7/1/08), 998 So.2d 16, 27. A statute that imposes a tax should be liberally construed in favor of the taxpayer. *Bannister Properties, Inc.*, 265 So.3d at 791. And if the statute can reasonably be interpreted more than one way, the interpretation less onerous to the taxpayer is to be adopted. *Entergy Louisiana. Inc. v. Kennedy*, 2003-0166 (La. App. 1st Cir. 7/2/03), 859 So.2d 74, 78, writ denied, 2003-2201 (La. 11/14/03), 858 So.2d 430.

Harrah's contends the phrase "[r]oom taxes" as set forth in La. R.S. 27:243(C)(1)(i)(2)(e) is ambiguous, maintaining that the proper interpretation of Subsection (e) is a recognition that it is merely a codification of the MOU that Harrah's entered into with Greater New Orleans Hotel-Motel Association in which it agreed to pay those taxes levied by the City to promote tourism. Urging that the lack of a statutory definition renders unclear what "room taxes" means, Harrah's asserts that because it has offered a reasonable interpretation of Subsection (e), we must adopt that interpretation.

We find Subsection (e) is unambiguous and clear. Nothing in the plain language is vague or susceptible of more than one meaning. On its face, Harrah's, as the casino gaming operator, is mandated to pay the room taxes "on all discounted and complimentary rooms ... at the applicable tax rates based upon the average seasonal rates for the preceding year of hotels in the [CBD] and French Quarter." Those taxes presently consist of the taxes levied by the City, which

9

Harrah's has remitted regularly since the enactment of Subsection (e), as well as the State sales tax, the LSED occupancy tax, and the NOEHA tax, the latter three of which are collected by the Department. Nothing in the statute limits the definition of "room taxes" to those levied by the City. In reaching our conclusion, we note as did the trial court that Harrah's has remitted to the Department all these State-collected taxes upon the furnishing of sleeping rooms for which its customers have paid, whether in cash or by credit card, as evidenced by the form (R-1029-DS) that it used to remit room taxes to the Department. It is only in the context of discounted or complimentary rooms that Harrah's suggests "room taxes" has an unclear and different meaning, but it points to nothing in the plain language of Subsection (e) to support its contention. Accordingly, the trial court correctly concluded that "room taxes" references all taxes levied by the State and the City on the furnishing of sleeping rooms.

Harrah's maintains that even if the Subsection (e) is correctly interpreted to apply to the discounted or complimentary sleeping rooms that it furnishes to its patrons at its New Orleans Hotel, the trial court erred in concluding that the blocks of sleeping rooms that Harrah's contractually reserved with third-party hotels to provide to its patrons on a discounted or complimentary basis were also subject to the imposition of State-collected room taxes based on the average seasonal rates for the preceding year of hotels in the CBD and French Quarter. In so contending, Harrah's notes that all room taxes, including the State-collected room taxes, were paid by the third-party hotels based on the price that Harrah's negotiated with the third-party hotels. Harrah's points to the provisions of La. R.S. 27:243(C)(2)(1)(i)(2) stating, "The casino gaming operator ... shall not provide lodging, except that the casino gaming operator may own or operate offsite lodging, which may be physically connected to the official gaming establishment" to suggest that

Subsection (e) -- which is one of the express conditions required for the removal of the prohibition of hotel ownership or operation by the casino gaming operator -- applies only to discounted or complimentary rooms physically connected to the casino, i.e., those hotel rooms owned or operated by the casino gaming operator. Therefore, Harrah's reasons that the discounted or complimentary sleeping rooms that it furnishes to its patrons at third-party hotels fall outside the ambit of the valuation set forth in Subsection (e). Having paid room taxes at the time it reserved third-party hotel rooms, Harrah's urges that it owes the Department no more.

We find nothing in the plain language of Subsection (e) that either limits its application to lodging physically connected to the official gaming establishment or excludes third-party hotels from its provisions. Room taxes are required to be paid by Harrah's as the casino gaming operator on *all* discounted and complimentary rooms at the applicable tax rates based upon the average seasonal rates for the preceding year of hotels in the CBD and French Quarter. Clearly, the blocks of rooms Harrah's reserves at discounted prices from third-party hotels are among "all discounted and complimentary rooms" as set forth in Subsection (e).

This interpretation is underscored by the provisions that were in effect prior to Act 1, relative to the prohibition which limited Harrah's from providing lodging and furnishing sleeping rooms to the public. According to La. R.S. 27:243, prior to its amendment by Act 1:

> C. The gaming operator shall not: ...
>
> (2) Offer lodging in the official gaming establishment, nor engage in any practice or enter into any business relationship to give any hotel, whether or not affiliated with the casino operator, any advantage or preference not available to all similarly situated hotels.[10]

---

[10] See La. Acts 1992, No. 384, § 1, eff. June 18, 1992 and Acts 1996, 1st Ex.Sess., No. 7, § 3, eff. May 1, 1996 (re-designating the provision of La. R.S. 27:243 from La. R.S. 4:643).

Therefore, prior to Act 1, the casino gaming operator was prohibited from reserving blocks of sleeping rooms with third-party hotels at a discounted rate, i.e., Harrah's could not "engage in any practice or enter into any business relationship to give any [third-party] hotel ... any advantage or preference not available to all similarly situated [third-party] hotels." Through Subsection (e) that prohibition was removed but Harrah's, as the casino gaming operator, was required to pay room taxes "on all [such] discounted and complimentary rooms ... at the applicable tax rates based upon average seasonal rates for the preceding year of hotels in the [CBD] and French Quarter."[11] Accordingly, we find no error in the trial court's interpretation of La. R.S. 27:243(C)(1)(i)(2)(e).

## CONSTITUTIONALITY

Determining whether a statute is constitutional is a legal question and, thus, reviewed de novo. In determining the constitutionality of a statute, we begin with the premise that statutes are generally presumed to be constitutional and, therefore, the party challenging the statute bears the burden of proving its unconstitutionality. *Mid-City Auto., L.L.C.*, 267 So.3d at 175.

Harrah's avers the conclusion that, under the provisions of La. R.S. 27:243(C)(1)(i)(2)(e), it is required to pay State-collected room taxes on discounted and complimentary hotel rooms it furnishes to its patrons at its New Orleans Hotel and third-party hotels violates the Louisiana Constitution. Noting that Act 1 originated in the Louisiana State Senate (Senate) as Senate Bill 1, Harrah's points to La. Const. art. III, § 16(B) to suggest that Subsection (e) constitutes an increase in tax liability for Harrah's and, therefore, is a revenue-

---

[11] The Department acknowledges that Harrah's is entitled to a credit for the amount of room taxes it paid to the third-party hotels in accordance with the contractual amounts Harrah's paid to secure the hotel rooms, reasoning that the securing of such hotel rooms was a purchase of something for resale, and that it is the sale to the ultimate consumer, i.e., Harrah's patrons' receipts of discounted or complimentary rooms, which is the taxable service.

12

raising or money appropriating measure that is required to originate in the Louisiana State House of Representatives (House).[12] Harrah's additionally asserts that under the provisions of La. Const. art. VII, § 2, Subsection (e) is unconstitutional because it created either a new tax obligation or increased an existing tax obligation without having been enacted by the requisite two-thirds majority of the Senate and the House.[13] Therefore, Harrah's constitutional assertion is that Subsection (e) constitutes a new tax, or an increase in an existing tax, enacted without the requisite constitutional procedures necessary for revenue-raising or money-appropriating legislation.

It is undisputed that Act 1 originated in the Senate and was not enacted by a two-thirds majority of the members of each house of the legislature. In reaching its conclusion that Subsection (e) is constitutional, the trial court reasoned:

> [L]ong before the 2001 Special Session amended and reenacted [La.] R.S. 27:243(C), the statutory scheme and authority for the imposition of taxes for the furnishings of sleeping rooms was in place. It's pretty clear. Anybody that operated a hotel knew what taxes applied and knew what they had to collect. ... What [Subsection (e)] did, it didn't create or impose a new tax obligation. It simply extended that existing obligation, the same statutory obligation that applied to all paying customers, [now applied] to [complimentary] rooms and discounted rooms. ... It's ... imposing and clarifying the obligation [stating] ... look, Harrah's, not only do you have to collect and remit the [taxes] on rooms paid for by the customer as established by the existing Louisiana statutory tax scheme, but also you have to do it on any rooms discounted or [furnished complimentarily]. That was done in connection with the revisions and reenactment to [La. R.S. 27:]243(C) that allowed for the operation of a hotel.... [Subsection (e)] even provides the manner in which the room [taxes] on a discounted or [complimentary] room is going to be calculated. Based on the average seasonal rates for preceding years of the hotels in the CBD and French Quarter.... That's necessary because, when you [furnish a complimentary] room, it's showing a zero [valuation of the service].

---

[12] La. Const. art. III, § 16(B), states in relevant part, "All bills for raising revenue or appropriating money shall originate in the House."

[13] La. Const. art. VII, § 2, states, in pertinent part, "The levy of a new tax, [or] an increase in an existing tax, ... shall require the enactment of a law by two-thirds of the elected members of each house of the legislature."

It is well settled generally, and specifically in Louisiana, that not every imposition of a charge or fee by the government constitutes a demand for money under its power to tax. If the imposition has not for its principal object the raising of revenue, but is merely incidental to the making of rules and regulations to promote public order, individual liberty, and general welfare, it is an exercise of the police power. In similar fashion, the police power may be exercised to charge fees to persons that have received grants or benefits not shared by other members of society. *Audubon Ins. Co. v. Bernard*, 434 So.2d 1072, 1074 (La. 1983).

Act 1 was a measure which had as its principal object the easing of Harrah's financial burden after it had filed for bankruptcy protection. Thus, Act 1 not only eased restrictions on Harrah's insofar as ownership and operation of its own hotel and allowed the casino gaming operator to secure discounted and complimentary rooms at third-party hotels for the purpose of generating revenue that had theretofore been unavailable to Harrah's, it also reduced Harrah's payment to the State by at least forty million dollars per year. Clearly, the enactment of Subsection (e) in Act 1 was merely incidental to the making of rules and regulations to promote public order, individual liberty, and general welfare. Therefore, it is an exercise of the police power by the State to Harrah's of benefits not shared by other members of society, rather than a revenue-raising or money-appropriating measure.[14]

Harrah's contends that the valuation method set forth in Subsection (e), based on the average seasonal rates of hotels in the CBD and French Quarter for

---

[14] See La. R.S. 27:2(A) ("The legislature hereby finds and declares it to be the public policy of the [S]tate that the development of a controlled gaming industry to promote economic development of the [S]tate requires thorough and careful exercise of legislative power to protect the general welfare of the [S]tate's people by keeping the [S]tate free from criminal and corrupt elements. The legislature further finds and declares it to be the public policy of the [S]tate that to this end all persons, locations, practices, associations, and activities related to the operation of licensed and qualified gaming establishments ... shall be strictly regulated.").

the preceding year, results in the levy of a new tax or the increase of an existing tax on the furnishing of discounted or complimentary hotel rooms at the New Orleans Hotel and third-party hotels to its patrons. Harrah's maintains that because it provided rooms at either a discounted price or complimentarily, it is responsible only for the amounts that the patrons actually paid or were charged for discounted hotel rooms and nothing for complimentary hotel rooms.[15]

Jimmie R. Kilby, an expert gaming industry consultant with over forty years of experience, explained by affidavit that as a reinvestment tool, based upon an analytical data analysis performed by the casino gaming operator, Harrah's provided their patrons discounted or complimentary hotel rooms in exchange for a statistically-calculated return or a theoretical win that Harrah's anticipated receiving. David Satz, a senior vice-president of governmental relations and development within the Harrah's ownership organization, corroborated Kilby's explanation of the value of discounted and complimentary hotel rooms. Satz confirmed that those to whom Harrah's offered discounted and complimentary hotel rooms were identified in a database and that as of April 2019, the database consisted of about 55,000,000 gamblers which, in addition to names, included information about what the gamblers bet, the games they played, and the frequency with which they bet. And Kathleen "Kit" Floyd, who served as the Director of Sales and Property Taxes for Harrah's, acknowledged that Harrah's records included a monetary valuation for the complimentary hotel rooms it provides to its patrons.

Mindful that businesses generally do not give away their assets, based on the showing made by the Department, the trial court correctly inferred that a consideration was present in Harrah's furnishing of discounted and complimentary

---

[15] See La. R.S. 47:302(C)(1) and n.7, supra.

hotel rooms to its patrons in exchange for the patrons' participation in gaming activities at Harrah's such that Harrah's owed room taxes as set forth in Subsection (e). See *Columbia Gulf Transmission Co. v. Bridges*, 2008-1006 (La. App. 1st Cir. 6/25/09), 28 So.3d 1032, 1042-43, writ denied, 2010-0249 (La. 4/5/10), 31 So.3d 369, and writ denied, 2010-0116 (La. 4/5/10), 31 So.3d 371 (because a consideration was present in the transfers by customers of natural gas for no charge to the owner/operator of an interstate natural gas transmission system for natural gas used as compressor fuel to maintain the gas pressure in the pipeline, the transfers constituted sales for which sales tax was owed by the owner/operator).

Harrah's asserts the average seasonal rate for hotel rooms in the CBD and French Quarter for the preceding year as set forth in Subsection (e) constitutes an inflated price and, therefore, an increase in the existing tax. But Harrah's, as the party challenging the constitutionality of a statute, offered no evidence to support its barebones contention that the method set forth in Subsection (e) resulted in a valuation that is more than that established by the analytical data analysis it has undertaken in its determination of the patrons to whom it provides discounted or complimentary rooms in exchange for a theoretical win. Having failed its burden of proving an increase in valuation of the discounted or complimentary hotel rooms, there is no error in the trial court's grant of the Department's motion for partial summary judgment since Harrah's failed to prove Subsection (e) is unconstitutional.[16]

---

[16] Harrah's also asserts that Subsection (e) is unconstitutional under La. Const. art. III, § 2(B), which sets forth, relative to extraordinary sessions, that the governor "shall issue a proclamation stating the objects of the extraordinary session" and that "[t]he power to legislate shall be limited, under penalty of nullity, to the objects specifically enumerated in the proclamation." Here, Item No. 1 of the proclamation stated, in relevant part, "to revise or repeal the prohibition and limitations on owning or renting hotel rooms by the casino gaming operator." Harrah's contends this was an insufficient articulation to allow the Louisiana Legislature to vote on legislation relative to Subsection (e). The long-standing jurisprudential rule of law is that a statute must first be questioned in the trial court, not the appellate courts, and the unconstitutionality of a statute must be specially pleaded with the grounds for the claim

## DECREE

For these reasons, we affirm the trial court's judgment, granting partial summary judgment in favor of the Louisiana Department of Revenue. Appeal costs are assessed against Jazz Casino Company, L.L.C. and JCC Fulton Development, L.L.C.

**AFFIRMED.**

---

particularized. *Vallo v. Gayle Oil Co., Inc.*, 94-1238 (La. 11/30/94), 646 So.2d 859, 864-65. Harrah's failed to plead an Article III, § 2 impediment. Although Harrah's asserted in its motion for partial summary judgment that Subsection (e) as interpreted by the Department resulted in a violation of Article III, § 2, the trial court did not address the issue. Nevertheless, we find the assertion is without merit. See *State ex rel. Porterie v. Smith*, 184 La. 263, 275, 166 So. 72, 76 (1935) (The Governor's call need not state the details of the legislation to be considered, as such matters are within the discretion of the Legislature and beyond the control of the Governor except for his power of veto. Where a general object is described, the legislature is free to determine in what manner such object shall be carried into effect). The methodology of valuation of no-longer-prohibited services set forth in Subsection (e) is merely an expression of the manner in which the object, i.e., the removal of the prohibition on owning or operating hotel rooms by the casino gaming operator, is to be carried into effect for taxation purposes.

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 1530

JAZZ CASINO COMPANY, L.L.C.

VS.

CYNTHIA BRIDGES, IN HER CAPACITY AS THE SECRETARY OF THE
LOUISIANA DEPARTMENT OF REVENUE, AND THE LOUISIANA
DEPARTMENT OF REVENUE

*CONSOLIDATED WITH*

2019 CA 1531

JCC FULTON DEVELOPMENT, L.L.C.

VS.

CYNTHIA BRIDGES, IN HER CAPACITY AS THE SECRETARY OF THE
LOUISIANA DEPARTMENT OF REVENUE, AND THE LOUISIANA
DEPARTMENT OF REVENUE

*CONSOLIDATED WITH*

2019 CA 1532

JAZZ CASINO COMPANY, L.L.C.

VS.

TIM BARFIELD, IN HIS CAPACITY AS THE ACTING SECRETARY AND
EXECUTIVE COUNSEL FOR THE LOUISIANA DEPARTMENT OF
REVENUE, AND THE LOUISIANA DEPARTMENT OF REVENUE

*CONSOLIDATED WITH*

JCC FULTON DEVELOPMENT, L.L.C.

VS.

TIM BARFIELD, IN HIS OFFICIAL CAPACITY AS THE ACTING
SECRETARY AND EXECUTIVE COUNSEL FOR THE LOUISIANA
DEPARTMENT OF REVENUE, AND THE LOUISIANA DEPARTMENT OF
REVENUE

*CONSOLIDATED WITH*

2019 CA 1534

KIMBERLY L. ROBINSON, IN HER OFFICIAL CAPACITY AS
SECRETARY OF THE LOUISIANA DEPARTMENT OF REVENUE, AND
THE LOUISIANA DEPARTMENT OF REVENUE

VS.

JAZZ CASINO COMPANY, L.L.C. AND
JCC FULTON DEVELOPMENT, L.L.C.

**THERIOT, J., dissenting in part.**

I disagree with the majority opinion insofar as it concludes that nothing in the

plain language of Subsection (e) excludes third-party hotels from its provisions.

Although the language of Subsection (e), read in isolation, does not differentiate

between complimentary or discounted rooms at a hotel owned or operated by the

casino gaming operator and those at third-party hotels, the rules of statutory

interpretation require us to consider this subsection in the context of the statute as a

whole. When interpreting a statute, words and phrases must be read within their

context and construed according to the common and approved usage of the language.

La. R.S. 1:3; see also *Colvin v. Louisiana Patient's Comp. Fund Oversight Bd.*, 2006-

1104, p. 6 (La. 1/17/07), 947 So.2d 15, 19 (the meaning and intent of a law is

determined by considering the law in its entirety and all other laws on the same

subject matter). Further, it is presumed that every word, sentence, or provision in a

law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. *Colvin*, 06-1104 at p. 6, 947 So.2d at 19. Consequently, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to and preserving all words can legitimately be found. *Colvin*, 06-1104 at p. 6, 947 So.2d at 19-20.

The version of La. R.S. 27:243 applicable to this case (prior to the 2019 amendment) states, in pertinent part:

> 2. The casino gaming operator, on its own or through an affiliate, shall not provide lodging, except that the casino gaming operator *may own or operate offsite lodging*, which may be physically connected to the official gaming establishment, *subject to the following conditions*:
>
> * * * *
>
> (e) Room taxes shall be paid by the casino gaming operator on all discounted and complimentary rooms to be paid at the applicable tax rates based upon average seasonal rates for the preceding year of hotels in the Central Business District and French Quarter of the parish of the official gaming establishment.

Thus, under the clear language of the statute, considered as a whole, the general rule is that a casino gaming operator may not, on its own or through an affiliate, "provide lodging." The statute provides for an exception to this general rule, such that a "casino gaming operator may own or operate offsite lodging, which may be physically connected to the official gaming establishment," subject to compliance with certain enumerated conditions. One such condition required for a casino gaming operator to own or operate offsite lodging was the condition provided in Subsection (e); i.e., that the casino gaming operator shall pay room taxes on all discounted or complimentary rooms at the rates set forth therein. In order to reach the conclusion that the room tax provisions of Subsection (e) also apply to discounted or complimentary rooms provided to casino patrons at third-party hotels, we have to ignore the words "own or operate" in Subsection 2 and assume that the

legislature meant to state that a casino gaming operator may "provide" lodging, subject to compliance with the listed provisions. Such an interpretation violates the rules of statutory construction outlined above, which require a court, whenever possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to and preserving all words can legitimately be found. Such a construction, which gives force to and preserves all words in the statute, requires us to conclude that the room tax provisions of Subsection (e) apply to lodging *owned or operated by* the casino gaming operator. I do not believe that the casino gaming operator *owns or operates* lodging when it provides complimentary or discounted rooms to its casino patrons at third-party hotels.

Moreover, even if any question exists regarding whether the casino gaming operator *owns or operates* the third-party-hotel rooms it provides to its patrons on a complimentary or discounted basis, taxing statutes must be interpreted liberally in favor of the taxpayer and against the taxing authority. If the statute can be reasonably interpreted more than one way, the interpretation less onerous to the taxpayer must be adopted. *Boyd Louisiana Racing, Inc. v. Bridges*, 18-1309, p. 7 (La.App. 1 Cir. 1/8/20), 294 So.3d 503, 510, *rehearing denied* (3/2/20). Words defining a thing to be taxed should not be extended beyond their clear import. Absent evidence to the contrary, the language of a statute itself must clearly and unambiguously express the intent to apply to the property in question. *Id.*, citing *Cleco Evangeline, LLC v. Louisiana Tax Commission*, 01-2162, p. 5 (La. 4/3/02), 813 So.2d 351, 355. I do not believe that the statutory language at issue herein clearly and unambiguously expresses an intent to apply to rooms provided by the casino gaming operator at third-party hotels. Thus, for the reasons set forth herein, I dissent from the portion of the majority opinion concluding that the room tax provisions of Subsection (e) are applicable to third-party hotel rooms.

4